Glad & Tuttle, Los Angeles, Cal. (Edward N. Glad, Los Angeles, Cal., of counsel), for plaintiffs.

Carl Eardley, Acting Asst. Atty. Gen. (Glenn E. Harris, New York City, trial attorney), for defendant.

### STYLES FOR BOYS, INC., James G. Wiley Co.

v.

### UNITED STATES.

**R.D. 11617; Entry No. 206587, etc.**

United States Customs Court.

Jan. 23, 1969.

WATSON, Judge:

These nine appeals for reappraisement, which were consolidated for trial, involve various styles of 12-gauge furblend fully fashioned ladies' sweaters which were manufactured by four different concerns and exported from Hong Kong between the dates of June 29, 1963 and September 30, 1963.

It was stipulated between counsel that the merchandise is not on the final list promulgated under the Customs Simplification Act of 1956.

The merchandise was appraised on the basis of constructed value as defined by section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

The details of appraisement concerning the various appeals for appraisement herein, are as follows:

| DATE OF EXPORTATION | COURT NO. | MERCHANDISE | KNITTING MILL | INV. & ENT. VALUES PER DZ. NET PKD. | APPR'D VAL PER DZ. NET PKD. |
|---|---|---|---|---|---|
| 7-6-63 | R66/22885 | Cardigans | Koon Chuen Kow Knitting Factory, Ltd. | $24.00 | $18.962 |
| " | " | Slipovers | " | $23.00 | " |
| 7-19-63 | R66/22886 | Cardigans | Luxim Knitwear Ltd. | $24.00 | " |
| " | " | Slipons | " | $23.00 | " |
| 7-15-63 | R66/22887 | Cardigans | " | $24.00 | " |
| " | " | Slipons | " | $23.00 | " |
| 6-29-63 | R66/22888 | Slipons | " | $23.00 | $18.932 |
| 8-8-63 | R66/22881 | Cardigans | Koon Chuen Kow Knitting Factory, Ltd. | $24.00 | $18.962 |
| " | " | Slipovers | " | $23.00 | " |
| 9-30-63 | R66/22882 | Cardigans | Maxim Knitters, Ltd. | $24.00 | $19.722 |
| " | " | Slipovers | " | $23.00 | " |
| 9-9-63 | R66/22883 | Cardigans | Luxim Knitwear, Ltd. | $24.00 | " |
| " | " | Slipons | " | $23.00 | " |
| 9-30-63 | R66/22884 | Cardigans | Koon Chuen Kow Knitting Factory, Ltd. | $24.00 | " |
| " | " | Slipons | " | $23.00 | " |
| 9-30-63 | R66/22889 | Cardigans | Hong Kong Handicraft Co. | $24.00 | $18.902 |
| " | " | Slipovers | " | $23.00 | " |

Plaintiffs, in these appeals, seek to sustain values comparable to the invoiced and entered values which are higher than the appraised values. Plaintiffs' claim for dutiable values for the involved merchandise which are higher than the respective appraised values is attributable to the fact that, upon liquidation, said merchandise may be classified under the value bracket provisions of paragraph 1114(d) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T.D. 51802, and of item 382.54 of the Tariff Schedules of the United States, which are provisions for merchandise valued not over $5 per pound. Paragraph 1114(d), supra, and item 382.54, supra, carry compound rates of duty of 37.5 cents per pound plus 30 per centum ad

valorem for merchandise valued not over $5 per pound, whereas said paragraph 1114(d) and item 382.57, which cover merchandise valued over $5 per pound, carry compound rates of duty of 37.5 cents per pound plus 20 per centum ad valorem.

The statutes herein involved as the basis of appraisement and with respect to the rates of duty, are as follows:

Section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956:

(d) For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) The cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers. and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

Paragraph 1114(d), as modified by T.D. 51802:

Outerwear and articles of all kinds, knit or crocheted, finished or unfinished, wholly or in chief value of wool, and not specially provided for:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Valued at more than $2 per pound:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other outerwear and other articles:

Valued at not more than $5 per pound .........37½¢ per lb. and 30% ad val.

Valued at more than $5 per pound .............37½¢ per lb. and 20% ad val.

Items 382.54 and 382.57 of TSUS:

Other women's, girls', or infants' wearing apparel, not ornamented:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Of wool:
Knit:

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

Other:

382.54 Valued not over $5 per pound .............37.5¢ per lb. + 30% ad val.

382.57 Valued over $5 per pound ................37.5¢ per lb. + 20% ad val.

Plaintiffs in this case called seven witnesses. Defendant recalled, as an adverse party, one of the plaintiffs' witnesses and, in addition, four other witnesses. Plaintiffs also introduced in evidence 24 affidavits, all of which were received, with the exception of plaintiffs' exhibit 8, as to which decision on its admissability was reserved. It appears that these affidavits, mainly from parties connected with various knitting mills, were introduced on plaintiffs' behalf to establish the claimed higher values for the involved merchandise. The defendant introduced, and there were received in evidence, 18 affidavits consisting mainly of letters from various knitting mills to certain companies with which the plaintiffs' witness, Mr. Larry Taylor, was connected. In view of the multiplicity of these exhibits, only such reference to them and to the testimony in this case, will be made as is deemed necessary, in the determination of the proper value of the involved merchandise.

The plaintiffs, in support of claimed higher values for the merchandise, state (plaintiffs' brief, page 4) that there are only two main issues involved: First, who is the manufacturer of the imported sweaters, and second, what are the various figures that make up the elements of "constructed value". Plaintiffs maintain that Style Design and Technical Consultants, Ltd., hereinafter referred to as "Style Design", is the manufacturer of all of the sweaters herein and that the sum of the elements of constructed value for these sweaters is comparable to the invoiced and entered values. Specifically, plaintiffs maintain that to the appraised values there should be added as part of the dutiable value of the merchandise, certain charges for so-called "styling" and "designing" which they maintain were incurred by the Hong Kong firm of "Style Design". Summarily, the testimony adduced on the part of the plaintiffs, is to the effect that either plaintiffs' witness, Mr. Larry Taylor or his Hong Kong firm of "Style Design" or "Style Makers,

Ltd.", another Hong Kong corporation, all hereinafter referred to, is the "manufacturer" of the involved merchandise and that to the actual cost of material and fabrication it was usual for this industry to add a markup of between 20 and 25 percent of the cost of material and fabrication for overhead and profit. (Plaintiffs' witness R.128 and R.248) It is further maintained on plaintiffs' part that salaries paid by Mr. Taylor to certain technical advisers to the knitting mills should be taken into account and added to the appraised values of the involved sweaters.

Mr. Larry Taylor, plaintiffs' main witness, testified that at the time of trial and for several years prior thereto, he had been president of Knit Wits, Inc., and Minkap of California, Inc., both of which were California corporations importing knitwear and other merchandise (R.45–47). He stated that he had also been a partner in the Hong Kong firm "Hong Kong Advanced Knitwear Company" ("Advanced Knitwear") since 1962 and that the firm was established "to buy and overlook the purchases, inspect merchandise of goods purchased in Hong Kong" (R.47). He further stated that he had also been director since 1963 of another Hong Kong firm called Style Design and Technical Consultants, Ltd. ("Style Design"), which assertedly did "what the name states" (R.48). Elaborating on the functions assertedly performed by Style Design, he stated (R.48):

> We work with factories that, perhaps in our own opinion, are not quite qualified to produce knitwear for the United States market; and, after careful investigation of these factories by myself and my technical staff, as to their machinery—such as knitting machines, washing equipment, and so forth—determine whether that factory has a potential to bring its quality up to the standards required in the United States.

Mr. Taylor also identified himself as vice president of the plaintiff, Styles

for Boys, Inc., a California corporation and an importer of Hong Kong knitwear (R.49–50). He stated that in all the foregoing companies except Styles for Boys, Inc.,[1] his associate was Mr. George Gonick, and that in all the corporations, he and Mr. Gonick each owned 50 percent of the stock (R.50). He stated that Styles for Boys had originally been intended as a corporation in which he and Mr. Gonick would own 50 percent of the stock between them, and Mr. Jerry Mann and Mr. Lenny Moss would own the remaining 50 percent, but an agreement could not be reached concerning the price the latter two should pay him and Mr. Gonick for the stock; as a consequence, instead of using Styles for Boys as the importer of the instant merchandise, the four individuals merely entered into the agreement evidenced in plaintiffs' exhibit 10 (R.50–52, 75, 76).

Mr. Taylor stated that in the firms in which he and Mr. Gonick were jointly engaged, the latter attended to the sales of the merchandise in this country, while he, Mr. Taylor, travelled overseas searching for products and handling the "technical aspects of working with the factories" (R.76–77). In 1962, Mr. Taylor opened an office of Hong Kong Advanced Knitwear, a partnership to which he had previously referred, and engaged a Mr. Sumii, a technician, to assist him "in working with the factories" (R.78). The first business he concluded there involved some ladies' cashmere and wool capri pants, utilizing fabric obtained from Italy. He worked through Manholt Trading Company ("Manholt"), a trading house which arranged for the importation of the fabric and supplied it to the factories, and to "put the entire package together, inspect the finished product, and make shipment to us" (R.78–79). Manholt was the name under which the Nichimen Company of Japan traded in Hong Kong (R.79–80).

Mr. Taylor admitted that neither Mr. Ikuta nor Mr. Hayami, technicians on the full phase of manufacturing of knitwear whom he had brought from Japan to work with the factories (R.102–103), was employed by "Style Design" but had been employed by him "to handle certain chores in Hong Kong" (R.140). While Mr. Taylor contended that after the formation of "Style Design", he spent about 80 percent of his time in lending technical assistance to the factories (R.144–146), he admitted that the 1963 Federal Corporation Income Tax Return for Knit Wits (wherein it was stated that he was vice president of that concern) indicated that he spent 80 percent of his time in that position (R.146–148).

Plaintiffs in this case, contend that the cost of styling and designing of the involved sweaters, whether done by mill or the buyer, is part of the cost of production of the merchandise. Mr. Taylor testified that Style Design "interpreted" the designs for the factory (R.155). He admitted, however, that the 10 different styles of sweaters involved in this case were all described in the contract of February 5, 1963 between Advanced Knitwear and Trimode Knitters, Ltd. (plaintiffs' exhibit 16), almost 4 months before the incorporation of Style Design, and that as of that date those designs "were already fully set" (R.162).

Mr. Taylor further testified that "Design primarily is the understanding of what could be sold" and that as purchasers of merchandise for resale in this country, that is precisely the knowledge required when he buys the merchandise (R.165).

Nothing in the record before me establishes that plaintiffs' witness, Mr. Taylor, or "Style Design", controlled the manufacture of the involved sweaters so as to render either Taylor or "Style Design" the "manufacturer" of the mer-

---

1. His subsequent testimony establishes that Styles for Boys was not an exception to the invariable "partnership" between himself and Mr. Gonick in all the enterprises mentioned (see e. g. R.76), but in spite of this, Mr. Taylor later indicated that others than the stockholders were to share in its profits or losses (see R. 171).

chandise, much less that the knitting mills "contracted out their production line" (plaintiffs' brief, page 25). Mr. Taylor admitted that none of the knitting mills ever entered into contract with either "Style Makers" or "Style Design" (R.172–173). He further admitted that "Style Design" had charged the knitting mills nothing for furnishing the supervisory or consulting services which it may have performed. He further stated that such functions had, in fact, been performed for the benefit of the joint venture which was purchasing the sweaters, to make certain that the former received the sweaters for which it bargained (R.173–174).

Plaintiffs, as heretofore indicated, contended that "Style Design" and not the Hong Kong knitting mills, was the "manufacturer" of the involved sweaters (plaintiffs' brief pp. 24–26). In this connection plaintiffs maintain that the mills did not "order" the yarn. However, neither did "Style Design" order the yarn, for, as disclosed by the record, Style Design was not even in existence until May of 1963. Moreover, all that the plaintiffs' witness, Mr. Taylor did, was to locate the yarn and enter into contracts to purchase it, which the witness admitted he then assigned to the mills (R.178–180). Further, the record clearly shows, in my opinion, that the yarn was paid for by the mills, with the help of "Nichimen". In the light of such testimony, as above indicated, I cannot and do not find that the alleged cost of styling and designing the involved sweaters, by whatever company under the control of the importer, can be considered as part of the "constructed" value of the involved merchandise.

Mr. Herman Gross, president of Elliott Knitwear Corporation, an importer of goods from the Orient, testified that since 1959 he had purchased sweaters from the Imex Corporation and that he considered such concern the only firm in Hong Kong qualified in overcoming technical difficulties in getting a proper finish with fur-blend sweaters. His testimony added little to a resolution of the issues here in question.

Mr. Jerry Mann, president of Jerry Mann of California, Inc., a garment manufacturer and importer, and one of the four identified "joint venturers" involved in the present litigation, was called as plaintiffs' next witness. The witness identified plaintiffs' exhibit 19 as the Memorandum and Articles of Association of "Style Makers", of which he, together with another, was a stockholder (R.193–194). He stated that the responsibilities of plaintiffs' witness, Mr. Leonard Moss and himself, in the joint venture with the witnesses Taylor and Gonick, were "helping with the financing", "doing the hard-core selling to the big chains and department stores, the styling and using our credit facilities" (R.194–195). The witness testified with respect to styling and designing that he could determine more accurately what designs would sell by talking with salesgirls than by speaking with buyers (R.190–191). Mr. Mann acknowledged that the 1964 information return for Federal Income Tax purposes filed by the "joint venture" heretofore referred to, gave no specific indication of any "design expenses" (R.202–205). It seems clear, from the testimony of Mr. Mann, that plaintiffs' witness, Mr. Taylor, sought to bring the "Jerry Mann" company and "Style Makers" of Hong Kong into the joint venture for two main purposes; one, to have at his disposal, as buyer of the sweaters, a corporation or an individual in the United States with a stronger credit standing than Mr. Taylor or his companies had, in order to finance the *purchase* and *resale* of the involved sweaters; two, was to have as well, a corporation or individual having more knowledge and experience than Mr. Taylor himself had, in effecting the resale in this country, on a mass scale, of the imported merchandise. I fail to find that the testimony of Mr. Mann establishes that any so-called expenses for styling and designing of the involved sweaters are chargeable as a legitimate cost properly

288

chargeable to the statutory "constructed" value of the involved merchandise.

Plaintiffs' witness, Mr. Karl Herzog, comptroller and vice president of Jerry Mann of California, Inc., admitted that the cost of his activities, mainly "inspection" which he performed on behalf of "Style Makers", a subsidiary of The Jerry Mann Company, was not properly attributable to the factories cost of production of the goods (R.253–254), even though such service entered into the final cost of the goods to the buyer (R.254–255). He further admitted that he had never incorporated such inspection costs into the value of any goods he had ever brought into this country, (R.260) nor had he ever paid any design costs, nor was he ever told what they were (R.266). Mr. Herzog, while stating that the cost of styling and designing whether done by the mill or the buyer would be "part of the sweater cost" (R.269), testified in substance that such cost should be charged to the buyer's overhead (R.270).

Plaintiffs in this case also have attempted to establish that certain moneys paid to Messrs. Ikuta, Hayami, and Sumii, employed by plaintiffs' witness, Taylor, to supervise the production of the involved sweaters (R.273), were part of the constructed value of the merchandise. Plaintiffs' last witness, Mrs. Evelyn Krow, who stated that she was the bookkeeper for "Knit Wits", "Minkap", "Styles for Boys" and "Style Design" (R.272), testified that she had personally compiled the records of the salaries of these employees. Certain exhibits in this case (plaintiffs' exhibits 22, 23 and 24) were received in evidence to establish that certain amounts were paid to these employees for "living expenses" as compensation for performing certain services having to do with the production ⸱ of the involved sweaters. Mrs. Krow admitted, however, that she did not break down these so-called "overseas salaries" into the particular products that such people might be working on (R.284). Further, the accounts she kept

did not indicate whether the expenses were incurred on behalf of any other company (R.287–288), and she had no recollection of any subsequent adjustments to those accounts for repayments of any such expenses (R.288). I am of opinion that neither her testimony nor the exhibits in connection therewith are sufficiently probative to adequately allocate the expenses purportedly paid to these employees, and further, that the record fails to establish that any such amounts paid are properly chargeable to the "constructed" value of the imported sweaters.

It cannot be concluded with respect to the testimony or other evidence adduced in the present record concerning the acts of plaintiffs' witness Taylor or other persons under his actual direction, such as Messrs. Ikuta, Hayami, and Sumii, whether Mr. Taylor was acting as an individual person, or on behalf of one or more of his many enterprises, nor can it be established on behalf of which company Mr. Taylor was acting. There is, however, in my opinion, one fact in this case which the record clearly establishes, and that is that plaintiffs' witness Taylor was at all times a partner in the joint venture with Messrs. Gonick, Mann, and Moss to *purchase* the merchandise here involved rather than to manufacture or sell it. The fact that Mr. Taylor persuaded "Manholt" to sign what purported to be Contracts of Sale (Defendant's collective exhibit E) of the sweaters from Manholt to Styles for Boys and then had Manholt invoice the sweaters to Styles for Boys at $23 and $24 per dozen, and had Manholt declare itself the "seller" of the merchandise on the Special Customs Invoices, would appear, to say the least, obviously designed to induce the customs officials to appraise the involved sweaters at the purported "invoice prices" which differed materially from the true purchase prices from the manufacturer-sellers. "Manholt" never at any time even saw the merchandise (R. 343), had no contract with the factory (R. 344) and did not have any physical or legal control over these

sweaters as would permit it to have the power to sell these sweaters. In passing, I may note that the cases of Lionel Trading Co., Inc. v. United States, 24 CCPA 432, T.D. 48900 and Stirn v. United States, 12 Ct.Cust.Appls. 42, T.D. 39981, are not pertinent in establishing that any other companies, other than the knitting mills in question, had such control over the production of these sweaters as to render such company or companies the "manufacturer" of the imported merchandise.

In my opinion, plaintiffs have failed to establish a *prima facie* case in support of their claimed "constructed" values, which, as far as this record discloses, are merely the addition to the appraised values of generally estimated amounts for "usual general expenses and profits" to the overhead and profits already included in the appraised values. Accordingly, plaintiffs in this case have failed in their burden of proof.

On the basis of the record here presented, I find as facts:

1. That the merchandise covered by the consolidated appeals for reappraisement cover single ply, 12-gauge, fur-blend ladies' sweaters in 10 different styles, exported from Hong Kong between June 29, 1963 and September 30, 1963.

2. That the involved merchandise is not on the final list promulgated under the Customs Simplification Act of 1956, T.D. 54521.

3. That the merchandise was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930 as amended by the Customs Simplification Act of 1956.

4. That the firm of Style Design and Technical Consultants is not the manufacturer of the involved sweaters.

5. That the sweaters in question were manufactured by the knitting mills in Hong Kong from whom they were ordered.

6. That the evidence submitted by the plaintiffs in this case is not sufficient to establish that the appraised values were erroneous or to establish some other correct statutory constructed values.

I conclude as matters of law:

1. That constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise here involved, and

2. That the proper values for the merchandise in question are the values found by the appraiser.

Judgment will be entered accordingly.