**NORCO SALES COMPANY**

v.

**UNITED STATES.**

**R.D. 11732; Reappraisements R66/19426, R66/12949.**

United States Customs Court.
Dec. 18, 1970.

Glad & Tuttle, San Francisco, Cal. (Edward N. Glad, San Francisco, Cal., of counsel), for plaintiff.

Carl Eardley, Acting Asst. Atty. Gen. (Susan C. Cassell, New York City, trial attorney), for defendant.

MALETZ, Judge:

These two consolidated appeals for reappraisement involve the question as to the proper dutiable value of certain sets of tools that were manufactured and exported to this country in 1965 and 1966 by the Lobster Tool Co. of Osaka, Japan.[1] The articles were invoiced at ex-factory prices, plus additional charges —noted on the invoices—for "handling commissions," storage, hauling and lighterage, inland insurance premiums and inland freight to port. The articles were entered at the ex-factory prices without including these additional charges as part of the dutiable value. However, the appraisement by the government appraiser was at the invoiced ex-factory prices, plus these additional charges. Plaintiff's claim is that these additional charges are nondutiable.[2]

---

[1.] The facts are set out in the opinion.

[2.] The parties are in agreement that the proper basis of appraisement is export value as defined by section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. § 1401a(b)). This section reads:

(b) *Export Value.*—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

At the outset, it is settled that "[i]f ex-factory prices and other charges are separately stated on the invoices and the appraiser's finding of value is expressed in terms of the invoice unit prices, plus the questioned charges, the appraisement is deemed to be separable. \* \* \* [In such circumstances], a party to a reappraisement proceeding may challenge one or more of the elements entering into an appraisement, while relying upon the presumption of correctness of the appraiser's return as to all other elements, whenever the challenged items do not disturb the effect of the remainder of the appraisement. Such is the case in the instance of an appraisement at ex-factory-plus-charges value, and the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value." United States v. Supreme Merchandise Company, 48 Cust.Ct. 714, 716–17, A.R. D. 145 (1962). See also e. g., United States v. Chadwick-Miller Importers, Inc. et al., 54 CCPA 93, C.A.D. 914 (1967); United States v. Bud Berman Sportswear, Inc., 55 CCPA 28, C.A.D. 929 (1967).

"An additional consideration important to note is that if separability is applicable, it is not necessary for the importer to show that other purchasers could have bought the merchandise at the same ex-factory prices paid by that importer." Karl Schroff & Associates, Inc. et al. v. United States, 65 Cust.Ct., R.D. 11720 (1970), application for review pending. For "the separability rule will give rise to a presumption that the ex-factory *price* which the appraiser found was *the* price at which the merchandise was freely sold or offered to all." United States v. Pan American Import Corp. et al., 428 F.2d 848, 852, 57 CCPA, C.A.D. 993. [Emphasis in original.] See also, e.g., United States v. Chadwick-Miller Importers, Inc. et al., *supra*, 54 CCPA at 95; United States v. Bud Berman Sportswear, Inc., *supra*, 55 CCPA at 29. However, as emphasized in the recent decision of the appellate court in *Pan American*, before separability may be invoked, it is first necessary for the importer to show that such or similar merchandise was freely sold or offered for sale to *all* purchasers on *an* ex-factory basis. United States v. Pan American Import Corp. et al., *supra*, 428 F.2d pp. 852, 853. Thus, "[i]f it be contended that the disputed charges formed no part of the value of the imported merchandise because they were incurred subsequent to the time when it was packed, ready for shipment to the United States, in the principal market of the country of exportation, all that need be proven is that such or similar merchandise was freely sold or offered for sale upon an ex-factory basis." Hub Floral Manufacturing Company v. United States, 62 Cust.Ct. 979, 983, 296 F. Supp. 355, 358, A.R.D. 249 (1969),[3] aff'd, United States v. Hub Floral Manufacturing Company, 428 F.2d 848, 57 CCPA, C.A.D. 993 (1970).

From what has been said it follows that if plaintiff has proven that the imports were freely sold or offered for sale upon an ex-factory basis, the inland charges here in question—for storage, hauling and lighterage, inland insurance premiums and inland freight— would not form part of dutiable value. We now turn to the record to determine whether this burden of proof has been met.

On this phase, the record includes an affidavit of an individual[4] who has been,

---

3. The phrase "such or similar merchandise," as defined in section 402(f) (4) (A) of the Tariff Act of 1930, as amended, means *in the first instance*: "The merchandise undergoing appraisement and any other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, the merchandise undergoing appraisement." See e. g., United States v. F. W. Myers & Co., Inc., 63 Cust.Ct. 706, 716, 306 F.Supp. 1396, 1401, A.R.D. 264 (1969).

4. In reappraisement proceedings, 28 U.S. C. § 2633 permits the reception in evidence of affidavits of persons whose attendance cannot reasonably be had.

since 1960, a director and export manager of the manufacturer-exporter—Lobster—in which capacity he has personal knowledge of the selling practices and prices of the merchandise sold by his company for export. The affidavit—which is uncontradicted—is to the following effect: Lobster's main business is the sale of hand tools, hand-tool kits and hardware. In selling for export to the United States, it "delivers its merchandise to the purchaser or the purchaser's agent either at the factory, the go-down, or free on board the vessel, or with cost insurance and freight depending upon the choice of the purchaser." The company "has made sales at ex-factory prices, ex-go-down prices, F.O.B. prices and c.i.f. prices. The difference in each of the above prices is that the purchaser must pay * * * [Lobster] the charges of getting the merchandise to the place of delivery. * * * The price at the same place of delivery is the same to all who care to buy at any given time, and the price does not vary because of quantity purchased."

The affidavit further points out that unless an item is under a sole sales agreement, Lobster "offers it's merchandise freely to all who care to buy for exportation to the United States without restrictions"; that hand tools sold to plaintiff in 1965 and 1966 were sold at ex-factory prices, with delivery at the factory;[5] and that these sales were not subject to a sole sales agreement and were freely offered to all who cared to buy.

■ This uncontradicted evidence—based upon the personal knowledge of a well-qualified witness—is persuasive in showing that all purchasers are free to buy at the ex-factory prices in the same manner as plaintiff always bought such merchandise. Emphasizing this is the further fact shown by the affidavit that Lobster requires those of its purchasers who choose to buy on an ex-godown, f.o.

b. or c i.f. basis rather than on an ex-factory basis to reimburse it specifically for all cnarges in excess of the ex-factory price that it incurs in getting the merchandise to the purchaser's selected place of delivery.

■ Defendant, however, argues that the essential statements in the affidavit are merely conclusory and hence without probative force. The argument lacks merit. For testimony by a qualified witness that his firm sells it merchandise for delivery at the factory, ex-go-down, or at the vessel, at the option of the purchaser, is not dependent upon interpretation of facts or evaluation of sales; on the contrary, such testimony "is itself a fact, not a conclusion, to which a qualified witness is competent to attest, without the necessity of providing corroborative evidence." Luria Steel & Trading Corp., et al. v. United States, 42 Cust.Ct. 480, 485, R.D. 9311 (1959), modified on other grounds, 42 Cust.Ct. 558, R.D. 9345 (1959). See also e.g., General Wool Co., Inc., et al. v. United States, 56 Cust.Ct. 730, 735–36, R.D. 11177 (1966), aff'd. 60 Cust.Ct. 970, A.R.D. 240 (1968); Fashion Ribbon Co. v. United States, 58 Cust.Ct. 737, 740, R.D. 11314 (1967), aff'd, United States v. Fashion Ribbon Co., Inc., 62 Cust.Ct. 1015, 296 F.Supp. 337, A.R.D. 252 (1969); Mannesmann-Meer, Inc. v. United States, 433 F.2d 829, 58 CCPA, C.A.D. 995 (1970).

■ The record, in short, is clear that the importations were freely sold and offered for sale to all purchasers at the invoiced ex-factory prices exclusive of the disputed inland charges. Accordingly, such charges do not form part of the export value of the importations in question.

We turn next to the question of whether the "handling commissions" comprise part of the dutiable value. As to this, the testimony of the president and general manager of plaintiff indi-

---

5. The president and general manager of plaintiff testified to similar effect that all sales to it by Lobster were ex-factory, with delivery at the latter's factory in Osaka.

cates that such "commissions" represented reimbursements to Lobster by the plaintiff for the traveling expenses incurred both by Henry Moro, plaintiff's full-time resident manager in Japan, and by Lobster's own officials and inspectors in visiting various Lobster subcontractors throughout Japan. The purpose of such visits was "to coordinate the manufacturers [subcontractors] and get the delivery straight to the factory for packaging and assembly * '* *." As explained by the witness (R.11):

Q. I direct your attention to that part of the invoice which shows a handling commission. Who gets that?

A. The manufacturer would have to spend this money to have their men and Henry Moro go to the different sub-contractors, traveling to different parts of Japan in order to —because "Lobster," they are basically an assembler. They manufacture some of the merchandise and then form these products out to the different, smaller manufacturers. And it would take Henry Moro and their people to coordinate the manufacturers and get the delivery straight to the factory for packaging and assembly and then export it to Kobe, as Henry's job, and that's where the handling commission would come in.

This testimony is amplified by the following remarks on cross-examination (R. 14–15):

Q. Mr. Tallman, would you kindly explain to us exactly what the handling commission represents?

A. The handling commission represents the cost incurred by both the "Lobster" Tool Co. officials and inspectors and Mr. Henry Moro. Let me just point out the way this is generally worked. Henry Moro lives in Tokyo. The transportation charges of him having to go to Osaka and the surrounding areas where these tools are manufactured by many small, little manufacturers.

He must visit these factories with their inspector, but he can't override their inspection. Yet he can say, "I want this done," or "I want that packaged a certain way." Generally, between both of them, this cost is incurred by traveling to all these different areas and having to inspect ·these particular tools and packaging, and so forth.

It is of course established that costs to a manufacturer in producing and marketing its product are part of the selling price and hence dutiable. E.g., Erb & Gray Scientific, Inc. v. United States, 53 CCPA 46, C.A.D. 875 (1966); Mottola v. United States, 46 CCPA 17, C.A.D. 689 (1958). Conversely, "a charge for services associated with the purchase of merchandise in the foreign market, and which is not an amount that inures to the benefit of the seller, is a buying commission, which, although affecting the cost of goods to the importer, is not part of the market value of the merchandise." United States v. Supreme Merchandise Company, 48 Cust. Ct. 714, 717, A.R.D. 145 (1962). In this context, the testimony is clear that the amounts labeled "handling commissions" were simply payments for travel expenses that were incurred *on behalf of Lobster* by Moro and Lobster's personnel in coordinating and inspecting the work of Lobster's subcontractors and in arranging for the packaging and shipment of the subcontractors' work products to the Lobster factory in Osaka for assembly. Such travel expenses were obviously costs incurred by Lobster in the production of its goods; they were scarcely the kind of commission an agent receives for performing services on behalf of a buyer in connection with the purchase of merchandise.

Quite distinguishable is Styles for Boys, Inc. et al. v. United States, 62 Cust.Ct. 772, 295 F.Supp. 282, R.D. 11617 (1969), aff'd, 64 Cust.Ct. 857, A. R.D. 272 (1970). There plaintiffs contended that constructed value—which both parties agreed was the proper basis of appraisement—should have been

*higher* than the appraised value. The basis of the claim was that the cost of services incurred by a consulting firm in rendering assistance to certain manufacturers of sweaters should have been added to the cost of production of the sweaters. Among the items thus claimed to be part of the cost of production were payments made by plaintiffs to three employees for allegedly supervising the production of the imported sweaters. The court held, however, that the record was not "sufficiently probative to adequately allocate the expenses purportedly paid to these employees" and concluded, therefore, that such expenses were not chargeable to the cost of production. 62 Cust.Ct. at 780, 295 F.Supp. at 288. Thus, this part of the decision was based merely on a failure of proof; it is hardly a holding that supervisory services in the actual production of the merchandise—when proven—do not form part of the cost of production.

The testimony in *Styles for Boys* further indicated that at least one of the above three employees also performed the final inspection of the sweaters and in so doing acted in behalf of the purchasers of the sweaters, not the manufacturers, in order to insure that the purchasers were receiving the quality of the merchandise they bargained for with the mills. Such inspection is obviously one of the most important, if not the most usual, function of a buyer's agent and is thus not part of dutiable value. But in the present case, the record fails to show that "handling commissions" were paid for this kind of inspection. This is to say that in order for plaintiff to prevail on this basis, it was incumbent upon it to prove—at the least—that any inspection that the manufacturers' employees and Moro might have undertaken was of merchandise which had been segregated and identifiable as the merchandise here in question. The record, however, is devoid of any such evidence. Nor does the evidence indicate that the activities of Moro and the manufacturers' employees—for which

"handling commissions" were paid—were limited to inspection, let alone inspection of merchandise that had been set aside for filling the contract between the manufacturers and plaintiff for the merchandise in question.

In conclusion, it is held (1) that export value, as defined by section 402(b) of the Tariff Act of 1930, as amended, is the proper basis of appraisement; (2) that the inland charges for storage, hauling and lighterage, insurance premiums and inland freight do not form part of export value; and (3) that the amounts described as "handling commissions" form part of export value. Judgment will issue accordingly.