(C.D. 4468)

THE OLGA COMPANY *v.* UNITED STATES

Court No. 72–4–00818

(Decided September 7, 1973)

*Glad, Tuttle & White* (*Edward N. Glad* of counsel) for the plaintiff.
*Irving Jaffe*, Acting Assistant Attorney General (*James Caffentzis*, trial attorney), for the defendant.

RICHARDSON, Judge: The merchandise of this action consists of intimate ladies' wearing apparel (brassieres, straps, panties and gar-

ters) which were exported from Mexicali, Mexico, between July and October, 1970, and entered at Calexico, California. It is alleged in the complaint that the correct value of the imported merchandise is the appraised constructed value (19 U.S.C.A., section 1401a(d) (section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956), without including the costs of the trips of the production manager of the plant of the parent company in the United States to the plant in Mexico, and less the cost or value of the American components sent to Mexico for fabrication, being the cut fabrics (which were allowed) and the findings, i.e., the thread, lace, tape and elastic (which were not allowed). Judgment is sought by the plaintiff directing the district director to reliquidate the affected entries, except entry 100818 which is abandoned (R.29), on the basis of the appraised constructed value without inclusion of the costs of the trips of the production manager of the plant of the parent company in the United States to the plant in Mexico, and less the cost or value of said findings.

The first issue to be resolved is whether the costs of certain trips to the Mexican plant by the plant manager of the parent company in California, averaging four trips a month, should be included as part of the general expenses in constructed value.

The plaintiff contends that the defendant has admitted in its pleadings that the amount for general expenses for constructed value equals the actual general expenses of the assembly plant in Mexico assembling the merchandise in question, and the costs of the trips of the production manager of the parent company are not part of these general expenses. The plaintiff further contends that aside from these admissions in the pleadings neither the record nor the case law cited by the defendant supports its claim that the costs of the California plant manager's trips to Mexico constituted supervisory expenses to be included in the constructed value.

The government contends that the trips were supervisory in nature and part of the cost of producing the finished article. In its brief it does not address itself to the charge by plaintiff that it has conceded the second point in issue by admissions in its pleadings.

The pertinent pleadings on the matter of a concession are paragraphs 19 and 21 of the complaint and the answer. These paragraphs in the complaint read as follows:

"19. The amount for general expenses for constructed value equals the actual general expenses of the assembly plant in Mexico assembling the merchandise in question."

"21. The cost of the visits of the Production Manager of the parent company is not part of the general expenses of the said assembly plant in Mexico."

The defendant in its answer admits the claim in both paragraphs 19 and 21 of the complaint. In its opening statement, it asserted that its admission in its answer was that the costs of the trips were *"not part of the cost of assembly of Olguita,* which is the Mexican plant." [Emphasis added.] And it undertook to argue a distinction between "cost of assembly" and "general expenses" of manufacture (R.7), without overcoming the admission in paragraph 19 that *the amount of general expenses for constructed value equals the actual general expenses of the assembly plant in Mexico.*

The court is of the opinion that the defendant has definitely made a concession in favor of the plaintiff on the second issue in the case.

Also the facts of record support the plaintiff's position.

Mr. Falquez, the plant manager of the California plant, made trips to the plant in Mexico, which averaged four days a month, to inspect the quality of the work in Mexico to ascertain if it was in accordance with specifications and up to the standard expected (R.19, 32, 34, 85–86). If he saw any deviation from standards he would advise the plant manager in Mexico. He denied any supervision of the production line, and there was no evidence that the quality inspections were absolutely essential to the manufacture of the imported merchandise, and thus required to be included in arriving at constructed value. The cases cited by the defendant involving the use of equipment loaned to a foreign manufacturer by the importer and the cost of testing manufactured parts borne by the importer which are essential to the production of an imported article are to be distinguished from the facts of this case.

There are no designs, patterns, molds or royalties involved in this case. A case which is in point on the facts in this case is *Styles for Boys, Inc., James G. Wiley Co.* v. *United States,* 62 Cust. Ct. 772, R.D. 11617, 295 F. Supp. 282 (1969), which involved the question of whether trips by employees of the importer to the knitting mills in the foreign country for inspection and consultation were part of the cost of producing wool sweaters. The court held that they were not part of such costs. The court stated at page 778:

> "He further admitted that 'Style Design' had charged the knitting mills nothing for furnishing the supervisory or consulting services which it may have performed. He further stated that such functions had, in fact, been performed for the benefit of the joint venture which was purchasing the sweaters, to make certain that the former received the sweaters for which it bargained."

This decision was affirmed in 64 Cust. Ct. 857, A.R.D. 272 (1970).

The second issue to be resolved is whether or not the plaintiff is entitled to a deduction from constructed value under item 807.00,

TSUS, as amended, for the cost of the findings, i.e., thread, lace, tape and elastic.

The government's position is that since the findings "were exported in continuous lengths on large spools [or in bulk], and had to be cut to size abroad for assembly, as such, when they left the United States, they were not fabricated components. In order to be made into what could be considered a fabricated component, they had to be cut in Mexico." (R.8.)

This court and the Court of Customs and Patent Appeals have clearly held that a trimming or cutting operation of material sent abroad in bulk or on spools or rolls for assembly is not a fabrication.

Defendant in its opening statement claimed that since the trimming of United States polyester assembled with Canadian polyethylene in the case of *C. J. Tower & Sons of Buffalo, Inc.* v. *United States*, 62 Cust. Ct. 643, C.D. 3840, 304 F. Supp. 1187 (1969), took place *after* the articles had already been assembled, the decision in that case has no application to the facts of this case. The evidence in this case shows that the cut fabrics were assembled by chain sewing and, with the exception of tape used for straps which was pre-cut before being sent to Mexico (R. 51), the trimming or cutting was *after* the assembly (R. 41-43). Thus, the rule in the *C. J. Tower* case is applicable to the facts in this case. In the case of *Baylis Brothers Company* v. *United States*, 64 Cust. Ct. 256, C.D. 3987 (1970), affirmed in 59 CCPA 9, C.A.D. 1026 (1971), pre-cut fabric and uncut thread were shipped from the United States and the cutting of the thread took place in the foreign country *before* the assembly operation, and the cutting was held not to constitute a fabrication.

In *General Instrument Corporation* v. *United States*, 59 CCPA 171, C.A.D. 1062 (1972), gold wire exported in bulk on a spool, and cut and assembled in the foreign country, was held not to have been fabricated in the foreign country. In fact, it was stipulated at the trial that "the gold wire in question is a fabricated component the product of the United States." See also, a case decided by the CCPA subsequent to the submission of briefs in this case: *General Instrument Corporation* v. *United States*, 60 CCPA 178, C.A.D. 1106 (1973), in which cutting to length prior to assembly or trimming of edges was held to be an operation incidental to assembly and not "further fabrication" under item 807.00.

Inasmuch as the thread, lace, tape and elastic in this case were exported in bulk or on spools or rolls, "ready for assembly" in their exported condition, they are entitled to be deducted from the appraised constructed value under item 807.00 and the authority of the above cited cases.

In view of the evidence of record, the court finds:

1. That the merchandise was appraised on the basis of constructed value (19 U.S.C.A., section 1401a(d) (section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956).

2. That the costs of trips by the plant manager of the importer in California to the manufacturer in Mexico, about four times a month, to ascertain if specifications and quality standards were being met are not a part of constructed value.

3. That since the findings, i.e., the thread, lace, tape and elastic were exported in bulk or on spools or rolls "ready for assembly" in their exported condition, and the mere cutting of the findings in the foreign country did not constitute a fabrication, the plaintiff is entitled to a deduction from constructed value of their costs under item 807.00, TSUS, as amended.

The complaint is sustained. Judgment will be entered accordingly.