**INTERNATIONAL FASHIONS, Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 76-15.**

United States Court of Customs and Patent Appeals.

Dec. 9, 1976.

Glad, Tuttle & White, Los Angeles, Cal., attorneys of record, for appellant; Edward N. Glad, Los Angeles, Cal., of counsel.

Rex E. Lee, Asst. Atty. Gen., Washington, D.C., David M. Cohen, Acting Chief, Customs Section, Velta A. Melnbrencis, New York City, attorneys of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MILLER, Judge.

This appeal is from the judgment of the United States Customs Court, 76 Cust.Ct. ——, C.D. 4640, 408 F.Supp. 1386 (1976). The parties agree that appraisement of the imported merchandise was properly based on export value as defined in section 402(b) of the Tariff Act of 1930, ch. 497, Pub.L. No. 361, 46 Stat. 590, as added by section 2(a) of the Customs Simplification Act of 1956, ch. 887, Pub.L. No. 927, 70 Stat. 943,

19 U.S.C. § 1401a(b).[1] The decisive issue is the propriety of the inclusion of a 5% commission, paid by appellant for certain inspection services, in arriving at the export value. The trial court held that the 5% commission was properly included. We affirm.

## Facts

The merchandise in this case consists of ladies' acrylic knitted sweaters and bouclé capes, manufactured in Hong Kong by Sincere's Knitting Factory, a partnership, exported therefrom in August 1971, and entered at the port of Los Angeles, California.

Appellant had encountered problems in obtaining saleable merchandise from the various manufacturers it dealt with in Hong Kong, including Sincere's Knitting Factory. Accordingly, in 1971, appellant entered into an oral agreement with Mr. James Cheung, manager of and a partner in Sincere's Knitting Factory, for such services as inspecting yarn to insure that it was not uneven, watching over the dyeing of the yarn to insure that it resulted in the color specified by appellant, weighing the yarn to insure that the amount returned from the dyers and knitters was the same as the amount purchased, inspecting the knitting process employed by the knitters, inspecting all knitted pieces to insure that appellant's specifications had been followed, and finally inspecting the finished garments. In short, appellant was to receive what was termed "a 100% inspection." For these services appellant paid Cheung a 5% commission on the f. o. b. price of the merchandise.

The merchandise was appraised at f. o. b. unit prices plus the 5% commission. Appellant has challenged only the addition of the commission to the unit prices.

## Opinion Below

The trial court held that although the separability rule[2] might be applicable to this case, appellant could not invoke the rule because there was no evidence presented showing that such or similar merchandise was freely sold or offered for sale to all purchasers for exportation to the United States at a price which did not include the disputed commission. The court also distin-

---

1. SEC. 402. VALUE.

 . . . . .

 (b) *Export Value.*—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

2. The separability rule in appraisement cases has been explained in *United States v. Supreme Merchandise Co.*, 48 Cust.Ct. 714, A.R.D. 145 (1962), quoted with approval most recently by this court in *United States v. H. M. Young Associates*, C.A.D. 1138, 505 F.2d 721, 724, 62 CCPA 20, 23 (1974) as follows:

 If ex-factory prices and other charges are separately stated on the invoices and the appraiser's finding of value is expressed in terms of the invoice unit prices, plus the questioned charges, the appraisement is deemed to be separable. *United States v. Dan Brechner et al.*, 38 Cust.Ct. 719, A.R.D. 71 [1957]; *United States v. Gitkin Co.*, [46 Cust.Ct. 788, A.R.D. 132 (1961)]; *Valley Knitting Co., Inc., et al. v. United States*, 44 Cust.Ct. 599, Reap. Dec. 9627 [1960]. Under the rule expressed in *United States v. Fritzsche Bros., Inc.*, 35 CCPA (Customs) 60, C.A.D. 371 [1947], a party to a reappraisement proceeding may challenge one or more of the elements entering into an appraisement, while relying upon the presumption of correctness of the appraiser's return as to all other elements, whenever the challenged items do not disturb the effect of the remainder of the appraisement. Such is the case in the instance of an appraisement at ex-factory-plus-charges value, and the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value. *United States v. Dan Brechner et al., supra.*

 The separability rule has also been extended by the Customs Court to apply to cases where the appraisement involves an f. o. b. price rather than an ex-factory price. *United States v. Knit Wits (Wiley)*, A.R.D. 251, 296 F.Supp. 949, 62 Cust.Ct. 1008 (1969).

guished between what it termed the " 'quality controlled' knitwear" of appellant resulting from services performed for the 5% commission and "non-quality controlled merchandise."

Further, the court concluded that even if appellant had established the applicability of the separability rule, the testimony of Mr. Bill Feldstein, Jr., appellant's owner-president, showed that the services performed by Cheung were performed prior to the merchandise being in condition, packed ready for shipment to the United States. Therefore, it held that the 5% commission was an expense includable in determining export value under section 402(b).

## OPINION

In appraisement cases the importer must bear the dual burden of proving that the export value established by the appraiser is incorrect and that his claimed value is correct. *Minkap of California, Inc. v. United States*, 55 CCPA 1, C.A.D. 926 (1967). If the importer fails to carry his burden of proof on either issue, the original appraised value stands. *Millmaster International, Inc. v. United States*, C.A.D. 987, 427 F.2d 811, 57 CCPA 108 (1970); *Kobe Import Co. v. United States*, 42 CCPA 194, C.A.D. 593 (1955).

Appellant contends that "the courts have consistently held that 'inspection' of merchandise, whether done before the merchandise is completely manufactured or after such manufacturing, is an activity engaged in by the buyer and therefore is not part of dutiable value." We disagree. All of the cases cited by appellant in support of its

position involved inspection services performed *after* the merchandise had been completely manufactured by the seller.[3] Cheung's inspection service, unlike the conventional final inspection of merchandise before shipment performed by a buyer's agent, permeated the entire manufacturing process from start to finish.

Appellant's reliance on *Styles for Boys, Inc. v. United States*, R.D. 11617, 295 F.Supp. 282, 62 Cust.Ct. 772 (1969), aff'd, 64 Cust.Ct. 857, A.R.D. 272 (1970), is misplaced. In that case, which involved constructed value of merchandise,[4] the plaintiff attempted to prove that costs of certain asserted supervisory or consulting services ("styling and designing" of ladies' sweaters) formed part of the constructed value of the goods (*i. e.*, were part of the costs of production and thus dutiable). The Customs Court held only that there was a failure of proof that such asserted services were dutiable, not that they were nondutiable.

 The evidence of record amply supports the Customs Court's finding that the presence or absence of the 5% commission determined whether or not the merchandise appellant received was quality controlled. Appellant's president testified that before such a quality control operation was instituted, "customer adjustments on the imported merchandise grew to an alarming point . . . ."[5] Therefore, we hold that the 5% commission was an expense "incidental to placing the merchandise in condition, packed ready for shipment to the United States" and that it was properly included in determining the export value of appellant's merchandise.

---

3. *United States v. Nelson Bead Co.*, 42 CCPA 175, C.A.D. 590 (1955); *United States v. Alfred Kohlberg, Inc.*, 27 CCPA 223, 226, C.A.D. 88 (1940); *United States v. Bauer*, 3 Ct.Cust.App. 343, 345, T.D. 32627 (1912); *Stein v. United States*, 1 Ct.Cust.App. 36, 37, T.D. 31007 (1910); *United States v. Knit Wits (Wiley)*, supra at n.2; *United States v. Shalom & Co.*, 57 Cust.Ct. 767, 771, A.R.D. 216 (1966); *Lollytogs, Ltd. v. United States*, 55 Cust.Ct. 608, 611, Reap. Dec. 11073 (1965); and *United States v. Supreme Merchandise Co.*, supra at n.2.

4. *Section 402(d) of the Tariff Act of 1930, supra*, as added by section 2(a) of the Customs

Simplification Act of 1956, *supra* at 70 Stat. 944.

5. A. [Mr. Feldstein] . . . And it was explained to me that as long as you can keep your quality control at a level where you aren't just importing and changing dollars with your customers here, that's fine. . . .

Q. What do you mean by changing dollars with your customers?

. . . . .

A. I am sorry for not being clear. What I meant by changing dollars was losing money.

Because appellant has failed to carry the burden of proof of showing the 5% commission to be nondutiable, it is unnecessary to reach the issue relating to separability.

The judgment of the Customs Court is *affirmed*.

*AFFIRMED.*