(C.D. 4877)

CONCORD ELECTRONICS CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 74–6–01614

(Decided October 14, 1980)

*Serko & Simon (Carl R. Soller* and *Margaret H. Sachter* at the trial; *Joel K· Simon* with them on the brief); for the plaintiff.

*Alice Daniel,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, Field Office for Customs Litigation (*Jerry P. Wiskin* at the trial and on the brief), for the defendant.

RICHARDSON, Judge: The merchandise in this action consists of tape recorders, parts, and other electronic equipment exported from Japan and entered at the Port of New York between April 30, 1970 and May 11, 1971. The merchandise was appraised on the basis of export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956). In issue under the export value basis is the dutiable status of an item designated on the invoices as "Our Commission". The importer contends that this item is nondutiable because it is a buying commission.[1]

---

[1] A claim in the complaint that certain inland charges are nondutiable was expressly abondoned by plaintiff.

The record in this action, hereinafter referred to as Concord II, consists of the testimony of four witnesses called on planitiff's behalf, the entry papers, some documentary exhibits, and the record in *Concord Electronics Corp.* v. *United States,* 69 Cust. Ct. 241, A.R.D. 304, 345 F. Supp. 1000 (1972), appeal dismissed, 60 CCPA 185 (1972), hereinafter referred to as Concord I, which was incorporated into the record in Concord II. In Concord I, an appellate term of the Customs Court affirmed the dismissal of the appeals for reappraisement which was rendered by a single judge (Maletz, J.) for failure of proof (R.D. 11744). Although Concord I involved the same parties and merchandise as are before the court in Concord II, the court never reached the issue as to the dutiable status of the commission in Concord I because the court found that the importer had never surmounted the separability hurdle, i.e., the capacity of a challenging party to limit its proofs to the single issue of the dutiability of the commission, owing to the severable character of the appraisement. The Concord I court reasoned that

> *there is no evidence to show what the appraising officer did* except that he placed a red check mark in the column headed "Appraised" on the summary sheet, thus indicating that the appraised value agreed with the entered value. (P. 244.) [Italic added.]

And the court went on to conclude that

> even if the commissions are bona fide buying commissions, they may not be deducted from the appraised values in order to establish different dutiable values, in the absence of evidence of all the elements of export value * * *. (Pp. 246–247.)

Concord II raises again the separability issue and the related issue as to the bona fides of the alleged buying commission. With respect to separability, the record in Concord II shows that plaintiff requested of defendant to admit, pursuant to Rule 6.2 of the Customs Court Rules, that "the commission indicated on the entry documents was included as one of the elements of value in determining the appraised value of that entry." And defendant responded to this request under the rule with a categorical "Admitted."

Additionally, import specialist Harold O'Neil testified that the Stamp "Correction Approved" placed on the summary sheet in entry 401377 reflected the fact that the commission shown on the invoice was originally deducted by the broker as nondutiable in his calculation of entry value, but was added back on instructions from the entry clerk when the clerk rejected the entry and returned it to the broker for that purpose. And it was also brought out in the witness' testimony that after the court's initial decision in Concord I, Mr. O'Neil wrote on a transmittal and routing slip under date of December 17, 1973, directed to the Protest Section the words "appeal for reappraisement dismissed per RD 11744—6/1/71 Commission remains dutiable." (Exhibit 1.)

Plaintiff argues that this evidence establishes that the appraisements in Concord II are separable. Defendant disagrees.

The court agrees with plaintiff. In the court's opinion, defendant's response to plaintiff's request for admissions conclusively removes the question of separability from contention in the case.

The admitted matter indicates that the commission on the entry documents was included as one of the elements of value in determining the appraised value. By admitting this, defendant identifies a commission as an element included in the admittedly unitary appraised value. It matters not at this point, as defendant undertakes to argue, that the admission does not establish to what extent or in what sense the stated commission was included as an element of value. It is the function of the challenging party's evidence to ferret out the details relative to the identity and purpose of the commission. Cf. *United States* v. *Imperial Products, Inc.*, 65 CCPA 38, C.A.D. 1203, 570 F. 2d 337 (1978).

Admission practice under the court's rules requires that a party specifically admit or deny the matter or set forth the reasons why the answering party cannot truthfully admit or deny the matter. The documentary evidence noted substantiates the genuine character of the admission, and indeed, may well have been the inducement for the admission itself. The admission is binding on the defendant.

Since defendant admits that a commission constitutes an element of the appraised value, the appraisements in Concord II are separable. *H. M. Young Associates, Inc.* v. *United States*, 69 Cust. Ct. 155, 159, C.D. 4388 (1972), *aff'd*, 62 CCPA 20, C.A.D. 1138, 505 F. 2d 721 (1974). And plaintiff may challenge the dutiability of the commission without disturbing the presumptively correct appraisements as to the other elements.

With respect to the commission, Howard P. Ladd, plaintiff's former president, testified that plaintiff, on the basis of a 50-percent stock interest in the Hosho Corp. (down from complete control originally), utilized Hosho solely as a buying agent in connection with the importation of merchandise Concord acquired from various Japanese manufacturers with whom it negotiated directly. And Ladd's testimony is corroborated by reference to a buying agency agreement dated January 25, 1968, contained in a report of a regional customs representative bearing date of November 30, 1971 (exhibit 7). The agreement provides for a 1.3 percent commission to the Hosho Corp. And the source investigated in the report disclosed that Hosho acted only as a buying agent and received only a commission for its services.

Of particular interest in the regional representative's report is documentation in the form of sales notes and an invoice of one of the Japanese manufacturer's, namely Matsushita Electric Industrial Co.,

Ltd. Although these documents as reproduced in the report are mostly illegible, there is enough data on them to indicate the manufacturer's awareness of plaintiff's interest in the merchandise as buyer even though delivery is to be made to Hosho.

Also, there is the affidavit of B. Takahashi, dated January 12, 1970, the managing director of Matsushita Electric Trading Co., Ltd. of Tokyo, Japan, which was received in evidence in Concord I as exhibit 2. The Takahashi affidavit names plaintiff as purchaser of the merchandise and identifies Hosho as plaintiff's agent. And, in an invoice attached to the affidavit as exhibit A, the Hosho Corp. is designated as a buying agent of Concord Electronics Corp.

Other evidence in the record is to the same effect, namely, the affidavit of Mike Miyake, dated January 12, 1970, president of the Hosho Corp. which was received in evidence in Concord I as exhibit 1.

Defendant, who called no witnesses, has introduced no evidence indicative of the parties' participation in these transactions in a capacity different from that set forth in the evidence noted. Some question is raised by defendant relative to Hosho's activities as ranging beyond the duties of a buying agent in connection with inspection services.

In Concord II, Mr. Ladd testified that Hosho visited the factory where plaintiff was having merchandise made and inspected the merchandise before shipping. In Concord I, the Miyake affidavit states, in this connection, "We observe production of Concord goods and inspect them when ready for shipment to make certain that they meet Concord's specifications." But testimony of Mr. Ladd in Concord I is indicative of the superficial nature of this inspection service. On cross-examination Mr. Ladd testified (R. 39–40):

Q. Do they inspect the merchandise for you?

A. Yes.

Q. I didn't notice that in the affidavit of Mr. Miyake. But they do inspect the merchandise for you, that's one of the things for which they are paid?

A. At some factories, yes.

Q. They "observe the production of Concord goods and inspect them when ready for shipment to make certain that they meet Concord's specifications." They didn't do too well when you had an $80,000 claim against Matsushita.

A. It is very difficult to inspect the quality of merchandise. You have to design it in.

Q. I didn't get that.

A. Their inspection of a product doesn't guarantee that it's going to stand up in the field as a consumer product, and ours would not be the first company that had that type of problem.

Q. Are you telling me that Concord was able to get Matsushita to give them an $80,000 adjustment on something which had a bad design, that didn't meet market specifications?

A. No. This actually was not Matsushita, it was another company. There was a product shipped in fairly large quantities which we shipped in turn, when we inspected, found it was satisfactory, shipped to the retailers around the United States. And there were many of them, after they were purchased by consumers, were defective and returned to the retailer, who in turn returned them to us and said, "This product is defective."

Q. What was the defect? Was it a factory defect?

A. It was a factory defect.

Q. Hosho couldn't determine that?

A. Hosho couldn't determine that due to the shipping of merchandise in climatic changes of variations, humidity, temperature, and vibration. The cabinets would deteriorate, some components deteriorated. The merchandise didn't perform in the field.

Q. As a matter of fact, you said that you didn't go to Hosho of Japan for a claim on this, but you went to the manufacturer?

A. Right.

On the evidence the court agrees with plaintiff that the record is clearly supportive of the existence of a bona fide buying agency which renders the underlying commission nondutiable. And the nondutiable status of the commission is not affected by the fact that it was paid in part for inspection services. As the court views the evidence the inspection services performed by Hosho were not of a quality control type affecting production of the merchandise, but rather were of the ordinary, garden variety post-production type that is commonly expected of a buying agent in the performance of its duties. Cf. *International Fashions* v. *United States*, 64 CCPA 35, 38, C.A.D. 1180, 545 F. 2d 138 (1976).

For the reasons stated, plaintiff has sustained the issuable allegations of the complaint relating to the commission. Consequently, defendant's motion to dismiss for failure of proof, made at the conclusion of plaintiff's case, is denied. And the court finds as facts:

1. That the merchandise in this action consists of tape recorders, parts, and other electronic equipment manufactured in Japan and exported therefrom between April 1970, and May 1971.

2. That said merchandise was appraised upon entry at the port of New York on the basis of export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) at the total invoice values less bank interest charges.

3. That there is evidence in the record that the amounts shown on the invoices for "Our Commission" are a charge for a bona fide buying commission.

4. That defendant admits that the invoiced charge for "Our Commission" was included as an element of value in the appraisement of said merchandise.

Upon these facts the court concludes as matters of law:

1. That the appraisements herein are separable.

2. That export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) is the proper basis for determination of the value of the merchandise herein.

3. That said values are represented by the total invoice values less amounts shown on the invoices for bank interest charges and commissions.

Judgment will be entered herein accordingly.