57 CCPA

**MILLMASTER INTERNATIONAL INC., Millmaster International Corp., Appellants,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5337.**

United States Court of Customs and Patent Appeals.

June 11, 1970.
Rehearing Denied Sept. 3, 1970.
See 429 F.2d 985.

Rich, Acting C. J., filed concurring opinion.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellants. Hadley S. King, James F. Donnelly, Norman C. Schwartz, David O. Elliott, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Harold L. Grossman, Bernard J. Babb, New York City, for the United States.

Before RICH, Acting Chief Judge, BALDWIN and LANE, Judges, and JONES, Senior Judge, United States Court of Claims, sitting by designation.

JONES, Senior Judge.*

This reappraisement appeal involves an industrial chemical, thiourea, produced in West Germany and imported into the United States.

The chemical was specified on the final list of the Secretary of the Treasury in 93 Treas. Dec. 14, T.D. 54521, as required by the Customs Simplification Act of

* Senior Judge United States Court of Claims sitting by designation of The Chief Justice.

1956, 91 Treas. Dec. 295, T.D. 54165. Therefore its value must be determined under section 402 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, 74 Treas. Dec. 17, T.D. 49646, and redesignated in the Customs Simplification Act of 1956.

The appraiser valued the imported chemical at Deutsche Marks 3.25 per kilo, net, packed, based on its foreign value as defined by section 402a(c) of the Tariff Act of 1930. Appellants (importers) filed an appeal to the United States Customs Court for a reappraisement, alleging that the appraisement was erroneous and should have been based on the United States value.

Customs jurisprudence requires any importer who seeks to overturn an appraisement to first prove that the appraisement is erroneous, thus overcoming the presumption of correctness that attaches to it by way of statute,[1] and secondly to prove that the value he claims is correct. United States v. Eggen, 55 CCPA 95, 97, C.A.D. 939 (1968); Minkap of California v. United States, 55 CCPA 1, 10, C.A.D. 926 (1967). Failure to prove either issue operates to leave the appraisement in full force and effect. Kobe Import Co. v. United States, 42 CCPA 194, 198, C.A.D. 593 (1955). The instant case is before us in this status.

The trial judge held the appraisement erroneous, since the appellants had proved that no statutory foreign or export value existed in West Germany during the years in question. Millmaster International, Inc., et al. v. United States, 58 Cust.Ct. 711, 717, 718, R.D. 11304 (1967). However, the appraisement was left in force, as the trial judge ruled that the appellants had failed to prove their second contention that there was a United States value. Millmaster International, Inc., et al. v. United States, 58 Cust. Ct. 711, 721, R.D. 11304 (1967).

The United States value statute, section 402a(e) of the Tariff Act of 1930, is as follows:

(e) The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

Of the items of this formula involved in this case, the United States selling price, transportation costs (foreign inland freight and ocean freight) and marine insurance were stipulated. Other items —general expenses and profit—were the subject of controversy, as the government disputed the appellants' method of calculating them.

The appellants introduced the testimony of their chief accountant, Richard Dixon, in an effort to prove allowances for general expenses and profit. This Mr. Dixon was an expert accountant who majored in accounting at Fordham University in 1958, had immediately been employed by Arthur Schilling, a certified public accountant in New York, and was currently working for a subsidiary of appellants.

Dixon testified that he was thoroughly familiar with the appellants' books, that thiourea represented approximately 70 percent of the business of appellants and that five other items represented the other 30 percent, that separate books were not kept by these small companies. It was too expensive and therefore not

1. 28 U.S.C. § 2633 (1964).

feasible. He further testified that each of the several items sold by appellants represented approximately the same percentage of gross profits, the expense per dollar sale was about the same, and that in his expert opinion the method used was a logical and reasonable one and he would say that "dollar for dollar the operating expenses for each product was the same."

This was positive testimony and there is no evidence to the contrary. In the circumstances it would seem that the trial judge might well have given consideration to the question of whether the facts in the instant case were sufficiently different as to take it out of the orbit of previous holdings by this court which dealt with a number of different commodities of wide ranging purposes none of which was a dominant factor, and thus have treated it as a case of new impression.

However, the trial judge held this evidence insufficient. The court was of the belief that in order to prove the United States value each and every element of the statutory formula had to be proven or stipulated. The court ruled that since the appellants failed to prove two elements of the formula, general expenses and profit, they had thus failed entirely and the appraisement, even though shown to be in error, was left in effect.

Following the rendering of this decision appellants moved for a rehearing under Rule 6(a) of the United States Customs Court. In an accompanying affidavit appellants stated their willingness "to waive and forego any claim for deductions [for general expenses and profits] under statutory United States value." A rehearing was denied.

Appellants then applied for review of the single judge's decision by the Appellate Term of the Court. The Appellate Term found no error and affirmed. Millmaster International, Inc., et al. v. United States, 61 Cust.Ct. 613, A.R.D. 247 (1968).

We reverse. The issues before this court are, first, whether or not importers may waive allowances for general expenses and profit under the United States value statute and, second, whether or not those allowances were properly waived in the case at bar. We answer in the affirmative to both issues.

The United States Supreme Court has defined waiver as "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The Supreme Court earlier stated that "[a] party may waive any provision, either of a contract or of a statute, intended for his benefit." Shutte v. Thompson, 82 U.S. (Wall) 151, 159, 21 L.Ed. 123 (1872). However, this general principle is somewhat limited. A party may not waive a right granted to further a legislative policy in the public interest as manifested in the statute or its legislative history if the waiver would thwart that statutory purpose. We quote the Supreme Court:

> With respect to private rights created by a federal statute, * * *, the question of whether the statutory right may be waived depends upon the intention of Congress as manifested in the particular statute. [Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 704, 65 S.Ct. 895, 901, 89 L.Ed. 1296, (1944).]

As will be noted this was a Fair Labor Standards Act case where the liquidated damages provision was as much a penalty for violation of the Act as for the benefit of the individual.

It follows then that if allowances for general expenses and profit under the United States value statute are rights intended for importers' benefit, then they may be waived so long as waiver will not interfere with any manifest statutory purpose. A careful reading of the statute indicates a clear intent that these allowances and the other available allowances in the United States value formula are rights intended for importers' benefit, and that there is no legislative policy involved that a waiver

would disturb. Therefore importers can intentionally waive them.

The Tariff Act of 1930 (§ 402a. Value (Alternative—Basis)) sets up a system for determining the value of imported articles subject to it. It fixes certain priorities among several available value determining formulae. Initially *foreign value* or *export value* (whichever is higher) is to be used. If neither of these can be satisfactorily ascertained then the *United States value* is to be used.

■ The United States value therefore is used in lieu of foreign or export value in those cases where neither of these preferred values can be determined. The United States value is found by a formula which if used properly will render a value that "approximates" the preferred foreign or export value. United States v. Robert Reiner, Inc., 35 CCPA 50, 54, C.A.D. 370 (1947).[2]

This formula begins with the United States selling price. This amount will be much greater than the foreign or export value, as it includes various expenses and profit. It would be an injustice to levy a duty on this amount without first making adjustments. Therefore the statutory formula grants importers the right to subtract allowances for their expenses and profit from the United States selling price. In this way a value is determined that will approach the preferred foreign or export value.[3] This court once stated, quoting Senator Walsh:

> In effect what the appraiser does when he employs the United States value basis is to work back to an approximate foreign value of the imported merchandise, starting from its wholesale price here and making deductions of charges included in or covered by that price subsequent to its

leaving the place of production abroad. [United States v. International Packers Limited, 48 CCPA 80, 86, C.A.D. 769 (1961), quoting 71 Cong.Rec. 4294 (1929).]

■ It follows that if an importer desires to take advantage of these rights granted by the statute, he must prove the sums to be deducted by a preponderance of the evidence or, as in this case, enter into a stipulation as to the sums with his adversary. If he cannot so prove an allowance, or does not desire to prove it, or no stipulation is agreed to, the importer can waive the right and still have a valuation based on United States value, knowing full well that the resulting value will be higher than if he had proved or obtained a stipulation to the amount of the allowance.

The government has argued that these allowances cannot be waived as they are integral parts of the United States value formula as statutorily established. It contends that to permit waiver of these allowances would violate congressional intent and create a new and different statutory United States value. The government has not cited any authority for such a conclusion.

A waiver would not change the statutory formula. The important item of the statute is the United States selling price. It must be proved. Once proved, the importer has a right to prove, stipulate or waive any or all of the statutory allowances available as he desires.

■ The sole remaining question is whether the appellants properly exercised their right to waive these allowances for general expense and profits. We hold that they did. The government maintained before this court, as it did before the Appellate Term, that a waiver, if per-

2. "The idea of the 'United States Value' provision, * * * is to arrive at a theoretical foreign market value." B. A. Levett, Through the Customs Maze, 50 (1923).

3. "United States value was originally conceived as an approximation of foreign value made possible by working backward from the selling price in the United States to a constructive foreign-market value by deducting expenses and profits incurred in importing the goods." R. E. Smith, Customs Valuation in the United States: A Study in Tariff Administration, 196 (1948).

missible at all, must have the government's consent to be proper. This is erroneous. This right is granted to the importer to exercise or decline at his option. He need not seek the government's acquiescence to waive it. The government relied on E. R. Squibb & Sons, et al. v. United States,[4] as authority for its contention that any waiver must have its consent. However, neither the permissibility of a waiver nor the necessity of government consent was at issue in that case because the importer there had waived his allowances under the statute and the government had "agreed." The court in the *Squibb* case did not rule on the issue involved in the case at bar.

█ The government also contends that in order for a waiver to be proper, an importer must satisfactorily prove the sums to be waived. This is not correct. If an importer has satisfactorily proved the sum of an allowance there would be no reason to waive. The purpose of waiver is to avoid the necessity of proof.

The government next contends that the waiver should have been made before the trial judge. Since it was raised only after the trial judge rendered his decision, it is argued that it came too late and was thus improper. The appellants moved for a rehearing in order to waive the allowances in question. A rehearing and an opportunity to waive were denied.

█ It was within the discretion of the trial judge to grant the motion for a rehearing. Most trial judges prefer to use this discretionary power in such a way as will tend to promote the ends of justice. In our opinion, under these circumstances, the trial judge should have granted a rehearing in order to allow the waiver. This would have produced a better result than leaving an erroneous appaisement in effect.

█ It would also seem to be within a trial judge's authority to find the United States value based on a proven

or stipulated selling price and on proven or stipulated allowances, while rejecting any allowances not satisfactorily proved. The importer then, if he chose, could appeal the simple question of whether or not he had proved the rejected allowances. In this way an erroneous appraisement would not be left in effect. This procedure would greatly simplify future cases.

█ In any case the appellants properly waived the allowances before the Appellate Term. The Appellate Term has the authority to "affirm, reverse, or modify the decision of the single judge or remand the case to such judge for further proceedings * * *." 28 U.S.C. § 2636(b) (1964). This statute has been construed as granting the Appellate Term the power to pass on questions of fact as well as of law. United States v. F. W. Woolworth Co., et al., 22 CCPA 184, 191, T.D. 47126 (1934). The Appellate Term should have permitted the waiver and found the United States value of thiourea based on the stipulated United States selling price and the stipulated allowances.

The judgment is reversed.

Reversed.

RICH, Acting Chief Judge (concurring).

I agree with the majority except as to the three-paragraph discussion of evidence submitted by appellant. I consider that discussion to be irrelevant and its inclusion only tends to confuse the issues before this court which, as stated by the majority, are:

* * * first, whether or not importers may waive allowances for general expenses and profit under the United States value statute and, second, whether or not those allowances were properly waived in the case at bar.

These being the issues, it does not matter what the evidence was.

---

4. 28 Cust.Ct. 560, R.D. 8094 (1952); aff'd 31 Cust.Ct. 445, A.R.D. 29 (1953); aff'd 42 CCPA 23, C.A.D. 564 (1954).