828 F.2d 188
 In re EVCCO LEASING CORP.
v.
ACE TRUCKING CO., Pension Plan Trust; Charles J. Orlando
and Martha E. Orlando, his wife; Donald Baker Mason
Contractors, Inc.; Modular Instructures, Inc.;
DaNave-Raleigh, Inc.; General Accident Group Freuho Corp.;
General Accident Insurance Co. of America; Tarricone &
Tarricone Insurance Services; Edward Fleming d/b/a Fleming
& Fleming; George Plumbing & Heating; Hunderton Heating &
Air Cond., Inc.; Alpha & Omega Assoc., Inc., t/a Lentine
Aggregates; North Pole Insulation; Frank Landon;
Hunterdon Concrete; Samuel Stathoff; Lafayette Welding;
E.F. Hutton Paper Corp.; International Paper Credit Co.;
and Midlantic Bank.
Appeal of MODULAR INSTRUCTURES, INC., Appellant.
 No. 86-5734.
 United States Court of Appeals,
Third Circuit.
 Argued March 18, 1987.
Decided Sept. 3, 1987.
Rehearing and Rehearing In Banc Denied Sept. 29, 1987.
 
 Arthur S. Mott, Jr. (argued), Hampton, N.J., for appellant.
 William S. Wolfson (argued), Wolfson & Knee, Flemington, N.J., for Evcco Leasing Corp.
 Before HIGGINBOTHAM, MANSMANN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This is an appeal from a district court's affirmance of a bankruptcy court's judgment voiding a creditor's execution lien upon realty. We must resolve two closely related questions: first, the proper construction of a New Jersey statute requiring levy and execution upon a debtor's personalty, even of little value, before realty; and second, whether, if a creditor has not complied with the statute, certain conduct of the debtor may be held to constitute a waiver or forfeit of the right to raise the noncompliance as a defense to the creditor's lien upon realty. Because we conclude that, although the appellant creditor did not comply with the New Jersey statute, the appellee debtor could and did waive the right to insist upon the statutory requirement, we reverse the district court's judgment.
 
 I.
 
 2
 Appellant Modular Instructures, Inc. (Modular) supplied labor and materials for a building for appellee Evcco Leasing Corp. (Evcco), a trucking firm. On February 28, 1984, Modular obtained a default judgment for $28,691.95 plus costs against Evcco in the Superior Court of New Jersey for Hunterdon County.
 
 
 3
 Modular obtained an order for discovery in aid of execution requiring Evcco's president, Charles Orlando, a public accountant, to give information under oath as to Evcco's assets. The supplementary proceeding took place on May 1, 1984, in Orlando's counsel's office. Orlando was not placed under oath and was not asked to respond in writing to interrogatories, nor was any official recording made. Orlando gave Modular's counsel, Arthur S. Mott, Jr., a depreciation schedule from Evcco's 1983 tax return and a then-current financial statement. The financial statement showed a bank account balance of $56.18 and a $8,600 debt owed to Evcco by Orlando's mother, a corporate officer. Orlando apparently stated to Mott that Evcco's rolling stock was fully liened, and that Evcco's realty was its only meaningful asset. Mott did not otherwise question Orlando specifically about Evcco's potential future earnings, bank accounts, outstanding debts to Evcco, or the value of its equipment other than vehicles. At the end of the supplementary proceeding, Mott stated that he saw no alternative but to levy upon the realty. Orlando and his counsel agreed and told him they understood "you have to do what you have to do."
 
 
 4
 Modular obtained a writ of execution and pursuant thereto directed a levy upon Evcco's realty, which the Hunterdon County Undersheriff carried out on May 25, 1984.[1] Modular took no action on the levy for nearly a year, however, in order to allow Evcco as long an opportunity as possible to resolve its financial problems. The writ required the sheriff to return the writ unsatisfied if a sale was not initiated by May 25, 1985, however, and Modular therefore began advertising on May 8, 1985, for a sheriff's sale on June 3, 1985. The sale was twice postponed at Evcco's request upon its representations that the property either had been sold or was to be sold privately and that Evcco would pay Modular from the proceeds. Evcco did not consummate the sale.
 
 
 5
 Prior to Modular's sale of the property under the writ of execution, Evcco filed a Chapter 11 petition in bankruptcy on July 10, 1985.[2] On August 7, 1985, Evcco, as debtor-in-possession, filed an adversary complaint that called upon all creditors to prove their liens. The bankruptcy court ruled that Modular's lien, then twenty months old, was void for failure to comply with a New Jersey statute providing for order of levy. N.J.Stat.Ann. Sec. 2A:17-1 (West 1986).[3] The bankruptcy court denied Modular's application for reconsideration and entered an order reconfirming its prior ruling. On appeal, the district court affirmed the judgment of the bankruptcy court. Modular thus became only a general creditor and therefore appealed to this court.
 
 II.
 
 6
 We first must determine whether the bankruptcy and district courts erred in holding that Modular failed to comply with Sec. 2A:17-1. If so, we must next determine whether Evcco somehow waived the protection of Sec. 2A:17-1. If it did not, we must decide whether Evcco is estopped from invoking the statute's protection by its representations at the supplementary proceedings. As we are required to consider only questions of law, our review is plenary. Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98 (3d Cir.1982). Because this is a bankruptcy action brought in New Jersey, we must interpret the relevant state laws as we believe the New Jersey courts would.
 
 A.
 
 7
 The only two cases prior to the district court's decision construing Sec. 2A:17-1 have both read the statute to require literal compliance with the requirement that there must be a good faith attempt to locate, levy, and execute on personalty before executing against realty. In re Silverman, 6 B.R. 991, 995-96 (D.N.J.1980); Raniere v. I & M Investments Inc., 159 N.J.Super. 329, 387 A.2d 1254 (Ch.Div.1978), aff'd, 172 N.J.Super. 206, 411 A.2d 719 (App.Div.), cert. denied, 84 N.J. 473, 420 A.2d 1298 (1980). Compare Ark.Stat.Ann. Sec. 30-401 (1947), construed in United States v. Weir, 235 F.Supp. 306, 309-10 (E.D.Ark.1963).
 
 
 8
 In Raniere, the plaintiffs' daughter defaulted on a bank loan the plaintiffs had guaranteed, and the bank obtained a judgment of $1,370.33. The bank directed the sheriff to levy on the Raniere's realty described therein. The writ instructed the sheriff to move first against personalty and to satisfy the judgment out of realty only if sufficient personal property could not be found. The sheriff, however, levied upon the realty immediately, without any investigation of personalty. The bank held no supplementary proceedings to ascertain the nature and value of any personalty. 159 N.J.Super. at 332-33, 337, 387 A.2d at 1255-56, 1258. The realty was sold at execution sale for $1,410.07, the total sum due the bank, with interest and costs. The realty was assessed at $40,000 and subject to an $8,000 mortgage and a financial statement of $1,915.60; the family home was therefore sacrificed for a debt worth less than one-twentieth of its equity value.
 
 
 9
 The Raniere court reviewed the history of Sec. 2A:17-1, stating that it "clearly and unequivocally expresses the legislative mandate that before the real property of a debtor may be seized and sold, the sheriff shall first levy upon the debtor's goods and chattels." Id. at 335, 387 A.2d at 1257. Noting that the statute reads that the sheriff shall be commanded to do this and that the statute is in contravention of common law, the court concluded:
 
 
 10
 The statutory language employed in N.J.S.A. 2A:17-1 leaves no room for equivocation. The statute mandates that the sheriff exhaust all personalty of the debtor that can be located within the county before levying and executing the debtor's realty.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 Our statute, N.J.S.A. 2A:17-1, is compulsory, not directory, in language. It mandates that the sheriff exhaust locatable personalty within the county before executing on realty.
 
 
 14
 Id. at 336-37, 387 A.2d at 1258.
 
 
 15
 The court emphasized, however, that the creditor bank in Raniere made no effort whatever to locate personalty: the bank directed the sheriff to proceed against the realty, and he did so within an hour. The court was also troubled by the bank's failure to conduct supplementary proceedings, which
 
 
 16
 are specifically designed to provide the judgment creditor with a fast and inexpensive method of discovering the assets of the judgment creditor [sic]. Yet this judgment creditor, like so many others, chose to forego a supplementary proceeding and instead directed the sheriff to levy and execute initially and exclusively against the plaintiffs' real property. Such a practice cannot be tolerated.
 
 
 17
 Id. at 337, 387 A.2d at 1258. The court concluded:
 
 
 18
 It is the holding of this court that an execution sale against realty held without a prior, good faith attempt to locate, levy upon and execute against personalty of the judgment debtor located within the county is in direct violation of the positive command of the Legislature and is therefore void.... In N.J.S.A. 2A:17-1 the judgment creditor or his attorney must make a good faith attempt to ascertain the location of debtor's personalty within the county and supply this information to the sheriff along with the writ of execution. Before levying and executing on the debtor's realty the sheriff must return a writ of nulla bona, certifying that he has made a strict and diligent search and has been unable to locate any personalty of the debtor within the county.
 
 
 19
 Id.
 
 
 20
 In In re Silverman, 6 B.R. 991 (D.N.J.1980), the district court examined both Sec. 2A:17-1 and the Raniere opinion. In that case, the creditors obtained default judgments and then writs of execution. The creditors then interviewed the debtors, asking questions from form interrogatories containing numerous questions about specific types of personalty, but no generalized question about personalty or questions about cash on hand or household goods. The creditors forwarded standard writs of execution to the sheriff, advising him or her that they had "conducted a supplementary proceeding in this matter and ascertained that there is no personal property of the defendant, and you are therefore instructed to issue execution on the real property...." 6 B.R. at 994. The sheriff levied on the realty, and three months later upon personalty contained in the Silvermans' home. The Silvermans then filed petitions in bankruptcy and the trustee filed a complaint ordering the creditors to prove their liens. The creditors filed complaints to fix their liens and for a judgment permitting them to sell the realty.
 
 
 21
 The bankruptcy court held that because the sheriff executed upon the realty before exhausting the personalty, and because discovery was held after the writs of execution were issued, the creditors' executions were void under Raniere. The trustee's lien on the realty was thus superior to the creditors'. Id. at 995. On appeal to the district court, the creditors attempted to distinguish Raniere because in Raniere there had been an execution sale prior to any attempt to locate or levy upon personalty. Moreover, they added, as the personalty was worth less than the judgments, levy and sale upon the realty was inevitable anyway. The district court rejected this argument in light of Raniere.
 
 
 22
 Clearly ... Raniere renders void an execution, as well as a sale, made prior to a good faith attempt to locate and levy upon a debtor's personalty. Even though the result may be harsh in some cases, Raniere ensures that judgment creditors will follow the mandate of N.J.S.A. 2A:17-1 with the greatest exactitude.
 
 
 23
 Id. at 995-96.
 
 
 24
 As does Modular in the present case, the creditors in Silverman argued that their investigation fulfilled the statutory requirement of a "good faith attempt to locate, levy upon and execute against personalty of the judgment debtor." Id. at 996 (quoting Raniere, 387 A.2d at 1258). The district court remanded the case to the bankruptcy court for reconsideration of the question of the creditors' good faith. 6 B.R. at 996.
 
 
 25
 Very shortly after the district court's decision in the present case, the bankruptcy court for the District of New Jersey decided another case construing Sec. 2A:17-1, In re Italiano, 66 B.R. 468 (Bankr.D.N.J.1986).[4] In that case, a judgment creditor instructed the sheriff to levy against personalty and realty at the same time, although the accompanying writ of execution properly instructed the sheriff to levy first against personalty. As in the present case, the creditor in Italiano had conducted "some limited discovery of the debtor's assets," id. at 478, asking about many types of personalty. The debtor answered in deposition that she had income from a part-time job, a pension, social security income, stock in a then-bankrupt corporation, cars, a boat, insurance, jewelry, three homes, and a vacant lot.
 
 
 26
 When the sheriff came to levy against the personalty, the debtor refused to allow entry. The creditor contended that this attempt satisfied the statutory requirement of a good-faith effort to levy first on personalty. The bankruptcy court held that the denial of entry to levy on personalty did not validate the levy on the realty, and that the lien on the realty was not properly perfected because the creditor had failed to give the sheriff a listing of personalty to be levied on. Id. at 478-80.[5]
 
 
 27
 Outside of New Jersey, in those jurisdictions that have enacted statutes providing that the sheriff may proceed against realty only if no personalty can be found, the courts have generally construed the statutes much more liberally:
 
 
 28
 Such a statutory provision has been regarded as merely directory in nature. In any event, the right to levy on realty is contingent, under the terms of the statute, on not finding personal property, rather than on the nonexistence thereof, and the levy upon and sale of realty is unjustified only where the officer knows of the existence of personal property of the execution debtor subject to execution, or by the exercise of reasonable diligence could have discovered it.
 
 
 29
 30 Am.Jur.2d Executions Sec. 130 (1967); see also 33 C.J.S. Executions Sec. 100 (1942).
 
 
 30
 Strict construction of the statute could well lead to absurd results requiring a creditor to waste time and hundreds of dollars in legal fees to reach a few dollars' worth of personalty. A creditor could avoid the risk of jeopardizing the claim against the realty by levying against both the realty and the personalty to begin with, and instructing the sheriff to move against only the personalty first. Personalty, however, includes accounts payable and income, and therefore as long as there is even the smallest trickle of income, the realty could be shielded indefinitely. This would be so even if the judgment were so big and the debtor's income so small that the income would not even cover the interest accruing on the judgment; thus the total amount owed would actually keep increasing. The district court in the present case recognized and was troubled by this point, but ultimately concluded that under the strict construction required by Raniere and Silverman, it had no alternative.
 
 
 31
 Modular contends that, even if the statute is construed strictly, the statute requires only a good faith effort to locate personalty, not to levy and execute upon it, before levy on realty; the language in Raniere suggesting the contrary is surplusage because that case turned on the creditor's failure to attempt even to locate personalty. The Raniere court did state it was a "material departure from the statute [that] renders the execution void." 159 N.J.Super. at 336, 387 A.2d at 1258 (emphasis added). Similarly, in Silverman, the court appears to have suspected that the interrogatories were not given in good faith, but were merely pro forma to avoid the Rainere rule once the writ had already issued.
 
 
 32
 Although we acknowledge Modular's efforts to give Evcco a chance to get back on its feet and its reliance upon Orlando's representations, we agree with the district court that Modular did not satisfy the very stringent requirements of section 2A:17-1, which extend to levy and execution as well as discovery. The policy underlying the order of levy is admittedly a throwback to feudal values, and the statute may indeed lead to undesirable results. Nevertheless, we cannot say that the courts interpretations in Raniere and Italiano of a New Jersey statute was impermissible. Modular's pragmatic arguments therefore are properly directed to the New Jersey Legislature, not this court.
 
 
 33
 We are left with the supplementary proceeding disclosing the existence of some personalty, although of little value.[6] Modular, albeit understandably, chose not to proceed against that personalty, and therefore whether or not its discovery attempts were adequate and in good faith, Modular failed to comply with the levy and execution requirements of the statute.
 
 
 34
 In sum, we agree with the district court that section 2A:17-1 is to be strictly construed, and that Modular's actions did not constitute compliance with the statute. If there is no bar to Evcco's assertion of the statute as a defense, Modular's lien must be held void ab initio.
 
 B.
 
 35
 That the order of levy is strictly required does not mean that it cannot be waived. It is well settled that a party may waive statutory provisions (as well as other rights) intended for that party's benefit and not affecting the public interest. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 704, 65 S.Ct. 895, 900-01, 89 L.Ed. 1296 (1945); In re Garfinkle, 672 F.2d 1340, 1347-48 (11th Cir.1982); Millmaster Int'l Inc. v. United States, 427 F.2d 811, modified, 429 F.2d 985 (C.C.P.A.1970); In re Zirpel, 53 B.R. 422 (Bankr.D.S.D.1985); Carolyn Schnurer, Inc. v. Stein, 29 N.J. 498, 150 A.2d 490, 492 (1959); Magna Mfg. Co. v. Aetna Casualty & Sur. Co., 129 N.J.Eq. 142, 18 A.2d 565, 569 (Ch. 1941); City Hall Bldg. & Loan Ass'n v. Florence Realty Co., 110 N.J.Eq. 12, 158 A. 506, 506 (Ch. 1932).
 
 
 36
 There is no reason to believe, and Evcco does not suggest, that the order of levy provision of Sec. 2A:17-1 is intended for the benefit of anyone but the debtor. There is no conceivable interest that any other person, let alone the public in general or the New Jersey legislature, could have in an unwaivable requirement that all personalty, even of slight value, must be levied upon before levy upon any realty. On the other hand, there are many cases in which a debtor would prefer to retain personalty (for example, tools of trade, commercial trucks and operating equipment, or treasured artwork) over realty. Courts, including New Jersey courts, recognized this long ago:
 
 
 37
 The provision in our statute that lands are to be sold for the payment of judgment debts only after the exhaustion of the personalty is a relic of the rule of the ancient English common law, having its origin in the feudal system, that land could not at all be sold for the payment of debts. We all know how gradually the great English landholders yielded to the importunity of mercantile creditors that their land should be devoted to the payment of their debts. Such liability was, however, finally established by statute, coupled with the condition, however, which we find in our system, providing for the exhaustion of the personalty prior to the sale of the land. But the hardship of this provision, and I may add its folly, was early manifested and remedied by the provision found in the revised act or 1846 (Rev.St. p. 661 Sec. 5), giving the defendant the right to require the sheriff to sell his land before selling his chattels. It is common knowledge that it may, and probably will, work a greater hardship to a defendant to have his personal property, which generally includes the implements of his business, the possession of which is an actual necessity for the prosecution of his ordinary affairs, sold away from him on a short notice, than to have his real estate so disposed of.
 
 
 38
 Bulat v. Londrigan, 63 N.J.Eq. 22, 27, 50 A. 909, 911 (Ch.1902), aff'd, 65 N.J.Eq. 718, 60 A. 1133 (1903) (emphasis added). Cf. Simon v. Sorrentino, 145 Pa.Super. 364, 20 A.2d 805 (1941) (court declined to decide whether sheriff must levy against personalty before realty, where debtor waived rights of order of levy by failing to assert them). The instant case presents a good example of a debtor who would logically prefer levy against realty first; moreover, the realty in question is not a family estate or residence, as in Raniere or Silverman, but in fact the very realty upon which sat the building for which Evcco owed Modular.
 
 
 39
 Evcco argues that Sec. 2A:17-1 is an exception to the rule and may not be waived, because an 1846 version of the statute provided for an election by the debtor of levy on personalty before realty. Rev.Stat. of 1846 at 660; see Raniere, 159 N.J.Super. at 334, 387 A.2d at 1257. There was no such election provision in the 1877 revision of the execution statute, General Statutes of 1877, Sec. 77 at 1288; see Raniere, 159 N.J.Super. at 334, 387 A.2d at 1257, nor in subsequent versions, including Sec. 2A-17-1. Evcco contends that by deleting the provision that made election possible, the New Jersey Legislature manifested its intention to eliminate the right of the debtor to choose a different order of levy. See 1A N. Singer, Sutherland Statutes and Statutory Construction Sec. 22.02 at 168 (Sands 4th ed. 1985). We reject this argument on several grounds.
 
 
 40
 First, the rule of statutory construction[7] upon which Evcco relies is inapplicable to the present case, because the passage in the predecessor statute omitted from Sec. 2A:17-1 dealt with election, not waiver, as we discuss infra. Moreover, the rule that a deletion of a provision in a statute indicates legislative intent to negate it is not an absolute one. 1ASutherland Secs. 22.13, 22.32. Finally, Sutherland states another, more relevant, rule of statutory construction: "As a general rule, legislation enacted to protect civil rights and govern contracts which does not carry criminal provisions may be waived by those affected." 2A Sutherland Sec. 55.08. Statutes must be interpreted to receive a sensible construction, limiting application so as not to lead to injustice and oppression, presuming that the legislature intended exceptions to avoid such consequences. Government of the Virgin Islands v. Berry, 604 F.2d 221, 225 (3d Cir.1979).
 
 
 41
 Whether or not we would construe Sec. 2A:17-1 as precluding an election, Evcco's argument cannot succeed, because it attempts to answer an assertion of waiver with an election argument. The two are not identical, nor does absence of provision for an election mean that there can be no waiver. Waiver is the "intentional relinquishment or abandonment of a known right or privilege." Barker v. Wingo, 407 U.S. 514, 525, 92 S.Ct. 2182, 2189, 33 L.Ed.2d 101 (1972); Barber v. Page, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968); Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); City of East Orange v. Board of Water Comm'rs, 41 N.J. 6, 194 A.2d 459, 465 (1963); Frazier v. Liberty Mut. Ins. Co., 150 N.J.Super. 123, 374 A.2d 1259, 1271 (1977). "Election," in the sense of election of rights, on the other hand, is a choice between two alternative and inconsistent rights. William W. Bierce Ltd. v. Hutchins, 205 U.S. 340, 346, 27 S.Ct. 524, 525, 51 L.Ed. 828 (1907). "Election" does not include intent to relinquish a right; it is a choice of one of two inconsistent rights, even though there is no intent to relinquish the other right. That a debtor may not direct the sheriff to disregard the requirements of a statute does not mean that the debtor may not relinquish its right to raise the defense of a creditor's failure to comply with the statute. We therefore reject Evcco's attempt to divert the analysis of the waivability of Sec. 2A:17-1 to a question of election.
 
 
 42
 We next must determine whether there was a waiver in the present case. A waiver need not be asserted directly or expressly. It is well settled that waiver may be established by conduct inconsistent with claiming the waived right or any action or failure to act evincing an intent not to claim the right. Mills v. Bank of the United States, 24 U.S. (11 Wheat.) 431, 439, 6 L.Ed. 512 (1826); McCoy v. Siler, 205 F.2d 498, 499 (3d Cir.), cert. denied, 346 U.S. 872, 74 S.Ct. 120, 98 L.Ed. 380 (1953); In re Garfinkle, 672 F.2d 1340, 1347 (11th Cir.1982). New Jersey courts have held that a waiver occurs when a party dispenses with the performance of something which he or she has a right to exact, or does or forbears to do something inconsistently with the right or the intention to rely on it. Roseville Bldg. & Loan Ass'n v. Jones, 130 N.J.L. 53, 31 A.2d 340, 341 (1943); McCue v. Silcox, 122 N.J.L. 12, 3 A.2d 437, 438 (1939); Merchants Indem. Corp. v. Eggleston, 68 N.J.Super. 235, 172 A.2d 206 (App.Div.1961); aff'd, 37 N.J. 114, 179 A.2d 505 (1962).
 
 
 43
 As both the district court and the bankruptcy court held that a debtor may not waive its rights under Sec. 2A:17-2, we would at least remand the action for a reexamination of the facts to determine whether Evcco did waive its right to insist upon the statutory order of levy under what we hold is the correct rule. However, we are persuaded by the record before us that Evcco's conduct amounted to a waiver as a matter of law. Orlando's statement to Mott to "do what you have to do" and his indication to him that Evcco's personalty was only of minimal value, and that the only possibility of a meaningful recovery, in his opinion, was the realty,[8] were only two examples of this conduct. One need not linger over the proper weight to be given those remarks, because Evcco's later conduct is even more clearly evidence of waiver.
 
 
 44
 Modular's levy against the realty occurred on May 25, 1984. Modular did not take any action on the levy until May 1985, near the end of the permissible period, however, in order to allow Evcco an opportunity to extricate itself from its difficulties. The sale was postponed further upon Evcco's representation that the property was about to be sold privately, and that Evcco would pay Modular from the proceeds. Evcco never consummated the sale, and Modular heard nothing more until July 10, 1985, when Evcco filed its Chapter XI petition. Not until trial in January 1986, at which time Modular's levy was twenty months old, did Evcco contend that the levy was invalid under Sec. 2A:17-1. Although silence alone will not constitute a waiver unless there is an obligation to speak, Midwest Maintenance & Constr. Co. v. Vela, 621 F.2d 1046, 1048 (10th Cir.1980), waiver may be inferred from silence or acquiescence as from other conduct or inaction. Minnesota Min. & Mfg. Co. v. Kirkevold, 87 F.R.D. 324, 335 (D.Minn.1980). Evcco's forbearance to object for twenty months and its repeated requests for postponements of the realty sale, when viewed in light of its officer's representations and comments to Modular's counsel, demonstrate that Evcco did indeed intend to waive the statutory order of levy.[9] On the record before us, we hold that Evcco has waived its right to raise as a defense Modular's noncompliance with Sec. 2A:17-1.
 
 C.
 
 45
 As we hold that Evcco could and did waive the order of levy requirement of Sec. 2A:17-1, we do not reach the question of estoppel. We note in passing, however, that, particularly where waiver is inferred from conduct, the same facts may establish both waiver and estoppel. Mitchell v. Aetna Casualty & Sur. Co., 579 F.2d 342, 348 (5th Cir.1978).
 
 III.
 
 46
 In sum, we hold that although Sec. 2A:17-1 must be strictly construed to require a good-faith effort to locate, levy upon, and execute against even minimal personalty before levy upon realty, a debtor may waive the right to invoke the protection of that statute as a defense. Evcco's conduct constituted such a waiver as a matter of law. Accordingly, we will reverse the order of the district court affirming the bankruptcy court's judgment voiding Modular's lien, and remand the case to the district court with instructions to direct the bankruptcy court to reinstate Modular's lien.
 
 
 47
 Costs taxed against appellee.
 
 
 48
 A. LEON HIGGINBOTHAM, Jr., Circuit Judge, concurring in part and dissenting in part.
 
 
 49
 The majority finds that Evcco is not entitled to invoke N.J.Stat.Ann. Sec. 2A:17-1 (West 1987). Under the admittedly involved circumstances of this case, I conclude that Modular has not shown that Evcco cannot invoke the section's protection. I therefore dissent.
 
 I.
 
 50
 Three issues are presented by this case: 1) whether the district court erred in concluding that Modular's lien was voided by Modular's failure to comply with Sec. 2A:17-1; 2) whether Evcco elected a levy and execution first upon realty and/or waived the protection of Sec. 2A:17-1; and 3) whether Evcco is estopped from invoking Sec. 2A:17-1. Since I concur in the majority's conclusion that Modular did not comply with Sec. 2A:17-1, I will discuss only the second and third issues.
 
 A.
 
 51
 Modular contends that it is protected by the doctrine of election. Modular argues that Evcco's president, Charles Orlando, by his representations at the supplementary proceedings as to the value of Evcco's rolling stock and his acknowledgment that Modular had no alternative but to levy upon realty, elected a direct levy upon realty. This argument cannot succeed. An 1846 version of Sec. 2A:17-1 provided for just such an election, allowing a judgment debtor to require a sheriff to sell realty before personalty. See Raniere v. I & M Investments, Inc., 159 N.J.Super. 329, 334, 387 A.2d 1254, 1257 (Ch.Div.1978), aff'd per curiam, 172 N.J.Super. 206, 411 A.2d 719 (App.Div.1980). The election provision has, however, been subsequently deleted from Sec. 2A:17-1. It is an established legal principle that amendment of an existing statute by deletion, addition, or substitution of provisions indicates a legislative intent to change the law. 1A J.G. Sutherland, Statutes & Statutory Construction Sec. 22.01, at 168 (Sands 4th ed. 1985). By deleting the provision that made election possible, the New Jersey Legislature manifested its intention to eliminate any option the debtor might exercise. I would therefore conclude that Sec. 2A:17-1 does not permit an election of the kind suggested by Modular.[1]
 
 
 52
 The majority draws a distinction between waiver and election and contends that a waiver is present here even if an election is not possible. I do not dispute the validity of the majority's distinction. Any confusion in earlier discussions or at oral argument most probably resulted from the fact that appellant, itself, apparently argued waiver and estoppel simultaneously. See Brief of Appellant at 34-37. Favorably interpreting appellant's argument to assert both waiver and election, as does the majority, I nevertheless find no waiver.
 
 
 53
 The majority's finding of a waiver is based in part on the twenty-month period between Modular's levy and Evcco's assertion of its right. The first twelve months of that period were spent in what all parties acknowledge was a real attempt to produce income that would render execution unnecessary. The next eight were arguably spent attempting to sell realty at a higher price than could be obtained at an execution sale so that more proceeds would be available for Modular. Evcco therefore cannot be said to have idly sat on its rights for the twenty-month period. This is simply not a case where Evcco acquiesced in Modular's levy during the course of litigation and at a late point attempted to assert a right it could easily have asserted earlier. Rather, Evcco apparently tried during the twenty-month period to recover financially so that its Sec. 2A:17-1 right would not have to be invoked. It is this effort by Evcco during the delay period to ensure that its rights would not be invoked that in part distinguishes this case from a proper waiver case.[2]
 
 
 54
 The majority's finding of a waiver is also based in part on ambiguous statements made during unsworn deposition testimony. Although Charles Orlando apparently did represent that Evcco's personalty was of minimal value, this statement cannot reasonably be interpreted as waiving Evcco's right to require levy upon what personalty existed. Further, there is no evidence that Orlando knew of and intended to waive Evcco's right by making the statement that Modular must "do what [it] ha[d] to do." Under New Jersey law, a waiver must be knowing and voluntary, and must be manifested by a clear and unequivocal act. Country Chevrolet, Inc. v. Township of North Brunswick Planning Bd., 190 N.J.Super. 376, 463 A.2d 960 (App.Div.1983); State v. Morgenstein, 147 N.J.Super. 234, 371 A.2d 96 (App.Div.1977). Orlando's statement is replete with ambiguity. Indeed, in the context of litigation, Orlando's statement about the propriety of doing what was necessary, rather than implying waiver, could reasonably be interpreted as indicating that Orlando intended to do what he could do to protect Evcco's interests, including ultimately asserting Evcco's rights under Sec. 2A:17-1. As noted elsewhere, Evcco's later activities were consistent with an effort to pay Modular back but did not necessarily manifest an intent to waive a right. As a result, I find the circumstances from which the majority infers a waiver simply too ambiguous to support such an inference. While I recognize that this is an extremely close and complex question, I believe it was Modular's responsibility to proceed cautiously in an area of the law in which courts have obviously placed a premium on strict compliance.[3]
 
 B.
 
 55
 Modular finally asserts that, even if it did not make the good-faith effort required by Sec. 2A:17-1 and even if Evcco could not elect a direct levy upon realty or did not waive its right to demand a levy first on personalty, Evcco is estopped from invoking the section's protection by its representations during the supplementary proceeding. While Orlando's representations themselves appear misleading, I cannot conclude that they give rise to an estoppel under the circumstances of this case.
 
 
 56
 The doctrine of estoppel may be invoked by a party who (1) reasonably relies on the representation of another (2) to his detriment. In re Assmann, 19 B.R. 960 (Bankr.E.D.Pa.1982). For essentially the same reasons I conclude that Evcco did not waive its right under Sec. 2A:17-1, I conclude that Evcco is not estopped from asserting its right under that section. First, Orlando's ambiguous statements do not constitute a representation of forbearance upon which Modular could reasonably have relied. The statements, in themselves, do not suggest that Evcco intended to relinquish any of its statutory protection. Further, and equally significant, Evcco's subsequent actions were consistent with an attempt to pay Modular back but not necessarily with an intention to relinquish its right. I therefore would find that a representation cannot reasonably be implied from Evcco's actions. Since neither an express nor an implied representation that the statute would not be invoked is present here, I would conclude that Modular cannot properly claim estoppel.[4]
 
 II.
 
 57
 For the foregoing reasons, I would affirm the district court's judgment.
 
 
 
 [1]
 At approximately the same time, another judgment creditor, Tarricone and Tarricone Insurance Services, obtained a Writ of Execution and on July 25, 1984, levied on the chose in action owed by Orlando's mother to Evcco. Also at approximately the same time, a third judgment creditor, Fleming and Fleming, obtained a Writ of Execution and on June 16, 1984, levied on Evcco's rolling stock. These levies, however, apparently ultimately proved fruitless
 
 
 [2]
 The realty was eventually sold under the bankruptcy court order, and about $42,000 remains of the proceeds
 
 
 [3]
 Section 2A:17-1 provides:
 In every writ of execution which shall be issued against real estate, the sheriff or other officer to whom such writ may be directed shall be commanded that he cause to be made, of the goods and chattels in his county of the party against whom such execution issues, the debt, damages and costs or sums of money mentioned in such execution; and that, if sufficient goods and chattels of such party cannot be found in his county, he cause the whole or the residue, as the case may require, of such debt, damages and costs or sum of money to be made of the real estate whereof such party was seized on the day when such real estate became liable to such debt, damages and costs or sum of money, specifying the day particularly, or any time afterwards, in the hands of any person then having the same.
 N.J.Stat.Ann. Sec. 2A:17-1 (West 1986).
 
 
 [4]
 We note that the Italiano court may have been influenced by the district court's disposition of the present case
 
 
 [5]
 The creditor in Italiano did not raise the questions of waiver of the statutory command or estoppel from asserting it
 
 
 [6]
 We have noted, supra, the other creditors' levies against Evcco's rolling stock and the debt owed by Orlando's mother were never executed upon, apparently because they were valueless. The rolling stock was liened to its full value. We also note that Orlando's brother-in-law was supporting himself by driving one of the trucks
 
 
 [7]
 We are dubious whether this is a question of statutory construction at all. As there is nothing in Sec. 2A:17-1 respecting waiver, the issue appears to be more one of the common law on waiver of rights, statutory or otherwise
 
 
 [8]
 Even though minimal value of personalty does not excuse compliance with Sec. 2A:17-1, Orlando's statements to that effect nevertheless may be indicative of Evcco's intent to waive the statutory order of levy
 
 
 [9]
 As noted, a waiver is a relinquishment of a known right. As the supplementary proceeding during which Orlando made the representations and comments to Mott was held in Orlando's counsel's office, Evcco is chargeable with knowledge of its right to insist upon levy upon personalty first
 
 
 [1]
 The majority makes much of the desirability of the possibility of a choice between levy and execution first upon personalty and levy and execution first upon realty. Based in part on that supposed desirability, the majority concludes that levy and execution first upon realty should be permitted here. I am somewhat uncomfortable, however, with the prospect of a federal court, as it interprets a state statute, adopting a policy that appears at least at some level to have been rejected by the relevant state. I somewhat fear that, in the interests of what it perceives to be equity, the majority loses sight of its role
 
 
 [2]
 It is true that Modular afforded Evcco opportunities to extricate itself from its business difficulties. But this is best understood as a determination by Modular that such leniency was in its long-term financial interest because there was a reasonable probability that Evcco might rebound and fulfill its obligations. As a consequence, I would not characterize this as a case in which Modular altruistically refused to execute and Evcco, after a substantial period of inactivity, suddenly asserted a previously known right
 
 
 [3]
 The majority erroneously conflates my assertions concerning election and waiver. My conclusion that Evcco may not elect under Sec. 2A:17-1--i.e. my conclusion that Evcco may not choose between two alternatives arguably presented by Sec. 2A:17-1--is based on the deletion of the provision found in the 1846 version of the statute. My conclusion that Evcco did not waive its rights under Sec. 2A:17-1--i.e., my conclusion that Evcco did not voluntarily relinquish the protection provided by the section in its various interpretations--is based on the nature of Orlando's statements and the nature of Evcco's conduct. Thus, an appropriate interpretation of my argument shows that I do not, as the majority suggests, "attempt[ ] to answer an assertion of waiver with an election argument." Maj. at 195 (emphasis in original). Further, and equally significant, an appropriate interpretation of my argument also shows that independent and proper bases support a finding for Evcco on the election and waiver issues
 
 
 [4]
 I do not find Evcco's behavior to be exemplary. Since, however, Evcco's assets will almost certainly be divided among its creditors no matter how this case is resolved, the primary effect of the disposition of this action will be to establish the certainty with which a party must waive the protection of Sec. 2A:17-1 and the circumstances under which a party may be estopped from invoking the protection of the section. Given the general New Jersey policy against levy upon real estate prior to levy upon personalty, I conclude that a more certain proof of waiver or estoppel should be made before the purposes of Sec. 2A:17-1 are frustrated. Though the result I suggest might not initially appear to be entirely fair, such a result would inure ultimately to the benefit of those that Sec. 2A:17-1 is clearly intended to protect