NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3331

RICHARD SOLER,

Petitioner,

v.

DEPARTMENT OF THE TREASURY,

Respondent.

_____

DECIDED:  February 9, 2006

_____

Before MICHEL, Chief Judge, FRIEDMAN, Senior Circuit Judge, and LINN, Circuit Judge.

PER CURIAM.

Richard Soler ("Soler") seeks review of the final decision of the Merit Systems Protection Board ("Board") that denied his petition for enforcement of a settlement agreement with the Department of the Treasury ("agency").  See Richard Soler v. Dep't of the Treasury, No. NY-0752-93-0562-C-3 (M.S.P.B. July 28, 2005) ("Final Decision").  Because the Board correctly concluded that Soler released the agency from the non-disclosure provisions of the settlement agreement, we affirm.

BACKGROUND

In 1993, the agency terminated Soler from his employment as a revenue agent based upon charges and findings that he filed a false income tax return and made false statements. Soler appealed his removal to the Board. Soler and the agency settled the action with an agreement that was made of record by the Board for enforcement purposes. Under the settlement agreement, the agency agreed not to release the information about Soler's removal unless he applied for a job with a taxing authority or applied to practice before the Internal Revenue Service ("IRS"). Further, the agency agreed to give a neutral reference in response to inquiries from potential employers. More specifically, the settlement agreement provided, inter alia, that:

> 2. The Agency agrees to rescind [Soler's] termination, including the June 24, 1993 letter of proposed termination and the August 20, 1993 letter of decision. . . .

> 4. The Agency agrees to remove from [Soler's] Official Personnel Folder (OPF) any and all materials and reference(s) which document the termination action, the allegations, the charges and/or investigation into [Soler's] activities; and to amend [Soler's] OPF to reflect that he resigned voluntarily from his position for personal reasons, effective September 3, 1993, including any information on [Soler's] Standard Form 50 and any other form in the OPF which recites the reasons for [Soler's] leaving his employment with the Agency. . . .

> 6. [Soler] agrees not to seek or apply for future employment with the Department of the Treasury, Internal Revenue Service, or any other taxation authority, including, but not limited to, the New York State Department of Taxation and the New York City Department of Finance. In the event [Soler] does apply for employment with any taxation authority, the Agency will have the right to inform the prospective employer of the charges set forth in the June 24, 1993 letter of proposed adverse action which formed the basis fo the Agency's termination action against [Soler]. . . .

8. [Soler] acknowledges that the Agency will maintain separate from Soler's OPF, copies of the June 24, 1993 letter of proposed adverse action, the August 20, 1993 termination letter and the evidence supporting the charges in the June 24, 1993 letter for use in the event that [Soler] either applies for employment with any taxing authority or applies for enrollment to practice before the Internal Revenue Service as set forth in paragraphs 6 and 7 of this Agreement.

9. Except as specifically set forth in paragraphs 6, 7 and 8 of this Agreement, the Agency agrees that responses to inquiries from potential employers, including other governmental agencies, which are directed to the Agency's Personnel Office concerning [Soler's] IRS employment, will be limited to Soler's length of service, last job title, grade and salary, and that he voluntarily resigned effective September 3, 1993 for personal reasons. [Soler] agrees to advise potential employers, other than those enumerated at paragraph 6 hererin, to contact the Personnel Office of the IRS Brooklyn District office for references.

In 2003, Soler signed a SF-86 Form, including an Authorization For Release Of Information ("Release Authorization"), in connection with his application for employment as a customs inspector with the Department of Homeland Security. The Release Authorization provided, in relevant part, that:

I Authorize custodians of such records and other sources of information pertaining to me to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency authorized above regardless of any previous agreement to the contrary.

(emphasis added).

In 2004, after having been found unsuitable for the customs inspector position by the Department of Homeland Security, Soler filed a petition to enforce the settlement agreement, alleging that the IRS did not purge his official personnel file and claiming that damaging information about him had reached federal agencies. In an initial

decision, the Board denied Soler's petition for enforcement without explictly addressing whether the IRS had failed to purge Soler's personnel file, based upon its determination that he had waived the agency's obligations under the settlement agreement by granting the Release Authorization. Richard Soler v. Dep't of the Treasury, No. NY-0752-93-0562-C-3 (M.S.P.B. Nov. 24, 2004) ("Initial Decision"). The Initial Decision became the Final Decision of the Board on May 28, 2005, after the Board denied Soler's petition for review for failure to meet the criteria for review set forth at 5 C.F.R. § 1201.115.

Soler timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

### A.    Standard of Review

Pursuant to 5 U.S.C. § 7703(c), this court must affirm the Board's decision unless it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence. Chase-Baker v. Dep't of Justice, 198 F.3d 843, 845 (Fed. Cir. 1999). Whether a waiver has occurred is a legal question based upon underlying facts. Caterpillar Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1368 (Fed. Cir. 2004); Sandler v. All Acquisition Corp., 954 F.2d 382, 384 (6th Cir. 1992). The legal conclusions of the existence and scope of a waiver are reviewable de novo. Sandler, 954 F.2d at 384.

B.    Analysis

The question before us is whether Soler's execution of the Release Authorization waived his right under the settlement agreement to prevent the agency from disclosing information concerning Soler's prior employment.   A waiver is an "intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464 (1938).  "A party may waive any provision, either of a contract or of a statute, intended for his benefit." Shutte v. Thompson, 82 U.S. 151, 159 (1872); see also Millmaster Int'l, Inc. v. United States, 427 F.2d 811, 814 (C.C.P.A. 1970).

Under the express terms of the settlement agreement, the agency contractually agreed to not divulge information about his removal unless he applied for a job with a taxing authority or applied to practice before the IRS and to give a neutral reference to prospective employers.  It is undisputed that Soler signed the Release Authorization, the terms of which authorized the release of his prior employment records, "regardless of any previous agreement to the contrary."  Soler does not allege, and there is no evidence to suggest, that Soler did not enter into the Release Authorization freely and voluntarily or that the Release Authorization did not reflect his intent to free the government from the prior restriction on disclosure.  By executing the Release Authorization, Soler waived his contractual right under the settlement agreement to hold the agency to its prior undertaking not to disclose information concerning his removal. See Shutte, 82 U.S. at 159.

For the foregoing reasons, we discern no error in the Board's conclusion that the Release Authorization effected a waiver of the agency's obligations regarding the non-

disclosure of information concerning his removal from the agency. We accordingly

affirm.